

1  Edward Norwood
   35156 Lido Blvd. Unit J
2  Newark, California 94560
   Telephone : (510) 209-7287
3  Facsimile: (510) 796-5072

4  The plaintiff in Pro Per

5

6                        E-filing

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11

12  EDWARD NORWOOD,                    CASE NO.

13                  Plaintiff,          )

14                                      ) NOTICE OF  COMPLAINT

          Vs                           ) ERISA 502 (a)(1)(b)
15
    LELAND STANFORD JUNIOR UNIVERSITY ) Denial of LTD. and Retirement Benefits
16
    SEDGWICK  CMS, et al.              )
17                                      )

18                  Defendants.         )

19  _____   )

20  Plaintiff Edward Norwood alleges:

21  The plaintiff is and was at all times mentioned herein a citizen of the state of California.

22  Jurisdiction of this court is pursuant of Title 29 of the United States Code.

23  This court has pendent jurisdiction over plaintiff state law claims in the federal court.

24  LELAND STANFORD JUNIOR UNIVERSITY is a nonprofit organization incorporated under the

25  law of the state of California having its principal place of business in the state of California

26  LELAND STANFORD JUNIOR UNIVERSITY is a nonprofit organization and its affiliates are

27  some corporations incorporated under the law of the state of California having its principal place of

28

                                1

1  Business in the state of California.

2  The jurisdiction of this court over the subject matter of this action is predicated on 29 U S C

3  1132(a). The amount in controversy exceeds $75,000.00 exclusive of interest and cost.

4  All defendants reside in this district as well as the claims of action arose in the district.

5  Plaintiff Edward Norwood alleges the following charging allegations against LELAND

6  STANFORD JUNIOR UNIVERSITY et al SEDGWICK CMS causes of action as follow:

7  1. Plaintiffs have exhausted all administrative remedies

8  2. The defendants failed to pay full vested benefits under the SPD for LTD. Plan

9  3. Defendant breach of contracts under SPD for LTD.

10  4. Defendants denied plaintiff prime rates under SPD for LTD.

11  5. Defendants denied plaintiff Servance pay benefits

12  6. Defendants denied plaintiffs past service credit under the retirement plan 75 rule.

13  7. Defendants failed to pay the full vested amount between SSA and LTD. benefit 66 2/3

14  8. Defendants denied payment of medical doctor liens

15  9. Defendants' claims management service Sedgwick CMS denied benefits against healthcare plans

16  10. Defendants denied that plaintiff suffered physical injuries on the job under the SPD and LTD.

17      Plan provisions.

18  11. Defendants failed to continue to pay full vested LTD. Benefits under the provisions of the SPD

19      For alleged physical and mental injuries on the job.

20  12. Defendants denied full payment of medical treatments rendered to the plaintiff under the

21  provisions of the SPD and LTD. Plan to leave the plaintiff with the burden of medical liens in

22  the amount of $57,000.00 unpaid.

23  13. The defendants denied plaintiffs approved rehabilitative employment under the provisions of

24  the SPD and LTD Plan.

25  14. The Plaintiff specifically alleges that he was denied benefit under the "terms of a plan,"

26  Furthermore, similarly situated pensioners were given benefits that were denied to the plaintiff.

27

28

2

1

2                                    FACTUAL BACKGROUND

3    On March 7, 2002, the plaintiff was examined by the defendant's doctor and was sent home because

4    of severe hypertension. The plaintiff reported a work injury to the Defendants Medical Department.

5    On April 1, 2002, following the plaintiff's termination, the plaintiff applied for State Disability

6    And Unemployment Benefits. The defendants denied plaintiffs benefits.

7    On July 9, 2002, the plaintiff filed an appeal for benefits under the Stanford University Voluntary

8    Disability Plan.

9    On October 22, 2002, Administrative Law Judge Deborah R. Schissell granted the plaintiff disability

10   Benefits under the Stanford University Voluntary Plan from March 19, 2002 through March 19,

11   2003.

12   (See Exhibit D)

13   On December 9, 2002, the defendants had the plaintiff examined by a physician of their choice, Dr.

14   William Anderson, Psychiatry. (See Exhibit S)

15   Dr. William Anderson issued a report dated December 9, 2002 and placed plaintiff on disability.

16   On March 19, 2003, the defendant stopped paying the plaintiff disability benefits and denied LTD.

17   Benefits under the LTD. Disability Plan. (See Exhibit a)

18   In May 2003, the plaintiff Filed a Complaint with the U S Department of Labor and The Department

19   of Labor enforced Medical Benefits and LTD. Benefits with back pay in July 2003.

20   On July 2, 2003, the defendant reinstated all Medical benefits to Plaintiff. (See exhibit N)

21   On March 5, 2005, the plaintiff filed an appeal requesting to continue LTD. benefits after March 19,

22   2004.

23   On March 19, 2004, the defendant stopped paying plaintiffs LTD. Benefits and discontinued

24   plaintiffs' Medical coverage while Plaintiff was still under the care of plaintiffs' physician and

25   therapist.

26   On March 24, 2004, Plaintiff was awarded Social Security Disability Benefits. (See Exhibit G)

27   On May 1, 2004, the Plaintiff's appeal was denied by the defendants Stanford University and

28

                                                3

1    Sedgwick CMS.  (See Exhibit M)

2    On July 14, 2004, the plaintiff was examined by Dr. David Waldman a report was issued and served

3    to  the defendants.

4

5    On October 7, 2007, The Workers Compensation Appeals Board State of California issued an

6    Opinion and Order Granting Reconsideration and Decision After Reconsideration. (See Exhibit F)

7    The Plaintiff would like to bring to the court's attention on July 8, 2008 the plaintiff will be re-evaluated  by Dr.

8    Waldman, this evaluation is being enforced due to the ruling of Judge Stanley Shields and  The Workers

9    Compensation Appeals Board.  Dr. Waldman's evaluation of the plaintiff would be relevant to the plaintiff

10    ERISA Claim for Benefits in the U S District Court. ( Exhibit X and X1).

11

12                                            ARGUMENT

13    The plaintiff Mr. Edward Norwood was employed for 24 years at  Stanford University the

14    Plaintiff contributed to the  LTD. Plan  through payroll deductions 22 years.  Therefore, should

15    receive full vested Retirement Benefits  in the whole thereof. ERISA, 502 (a)(1)(B)

16    The plaintiff  alleges that the defendant's Leland Stanford Junior University denial LTD. and

17    Retirement benefits were  arbitrary and capricious as well as a breach of fiduciary duties to the

18    plaintiff

19    The U S Department of Labor enforced the defendant Stanford University to reinstate the plaintiffs

20    LTD. benefits term plan and back pay in July 2003.

21    The Plaintiff  request for application of de novo review

22

23

24

25

26

27

28

                                                4

1

## SUMMARY

2    The Plaintiff Edward Norwood was employed by the Defendant from September 1, 1981 through

3    March 19, 2002 and was a fully vested participant that contributed to the LTD. Plan through payroll

4    Deduction. The plaintiff is seeking relief for entitlement of continued LTD. and Retirement Benefits

5    The U S Department of Labor enforced the Defendant Leland Stanford Junior University to reinstate

6    the plaintiff two years of LTD. benefits in July 2003. On March 19, 2004, LTD. benefits ended.

7    The plaintiff only remedy left in this matter after exhausting all other administrative remedies in

8    This very Court , also note that the plaintiff is open for a good faith mediation and settlement

9    Negotiations payable by the defendant at all times. The plaintiff also request that the Courts review

10   All evidence in the whole thereof Exhibit A-Z noted exhibits. The plaintiff also states that all

11   medical Administrative record issued by all physicians and psychiatrist is available upon request of

12   the Courts as needed in support of plaintiff ERISA claims in this matter.

13   The Plaintiffs request for application of de novo review in the above matters.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5

1    Prayer

2    Wherefor the plaintiff Edward Norwood humbly prays judgement against the defendant Leland

3    Stanford Junior University and Sedgwick CMS,

4    1. That the court would grant the plaintiff full vested reinstatement of LTD. and Retirement

5       Benefits.

6    2. Loss of economic wages $150,000.00

7    3. Unpaid medical expense's lien's $57,000.00

8    4. Today's interest on all lost wages and benefits in the whole thereof

9    5. Reasonable Attorney fees for assistance and help

10   6. Future Benefit

11   7. Approved Rehabilitative Employment

12   8. Cost and reimbursement / medical Expenses / Cobra $3500.00 with interest

13   9. Injuries and treatment / general damages and liabilities

14   For other further orders as the court deems reasonable and proper for the plaintiff Edward

15   Norwood.

16                                  Verification

17   I Edward Norwood, a pro per plaintiff in the above matter has read and know the contents of the

18   Matters stated are true to the best of my knowledge. I declare under the penalty of perjury under the

19   Laws of the state of California that the foregoing is true and correct.

20

21                                          Dated this 30th day of April 2008

22

23

24                                          Edward Norwood

25

26

27

28

                                  6

1                            PROOF OF SERVICE

2

3           I ZEPORIA SMITH  reside in the City of Fremont and County of Alameda :

4   my home address is 3413 Foxtail Terrace Fremont California. I am over the age of

5   eighteen years and not a party in this action . On April 30, 2008, I served the following

6   document(s):

7   NOTICE OF COMPLAINT AND EXHIBITS A THROUGH Z TO THE UNITED

8   STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

9   By personally delivering a true copy thereof, In accordance with the code of Civil

10   Procedures s1011, to the person(s) at the address set forth below.

11   Office of the Clerk

12   United States DISTRICT Court

13   NORTHERN DISTRICT OF CALIFORNIA

14   450 GOLDEN GATE AVE 16TH FLOOR

15   San Francisco California 94102

16   I declare under  penalty  of perjury under the laws of the State of California that the

17   foregoing is true and correct, and this document was executed on APRIL 30, 2008

18   FREMONT, California.

19

20

21

22                         ZEPORIA SMITH

23 CC: The Court

24   CC: The Clerk of The Court

25   CC: Leland Stanford Junior University

26   CC: Sedgwick CMS

27   CC : Edward Norwood

28

1                Business Addresses to all Parties

2 Defendant Leland Stanford Junior University

3 Legal Office Bldg 170, 3rd Floor

4 Stanford California 94305

5 (650) 723- 6397

6

7 Defendant, Sedgwick Claim Management Services

8 3280 E. Foothill Blvd Suite 250

9 Pasadena, Calif 91107

10 Phone( 626) 568-1415

11

12

13 Plaintiff, Edward Norwood

14 35156 Lido Blvd Unit J

15 Newark, Calif 94560

16 (510) 209-7287

17

18

19

20

21

22

23

24

25

26

27

28

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

EDWARD NORWOOD
ALAMEDA COUNTY

## DEFENDANTS

LELAND STANFORD JUNIOR UNIVERSITY
SANTA CLARA COUNTY

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

IN PRO PER

Attorneys (If Known)

UNKNOWN

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | | | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☒ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900 Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | 26 USC 7609 | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 another district (specify)
Transferred from
☐ 6 Multidistrict Litigation

Appeal to District
☐ 7 Judge from Magistrate Judgment

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

## VI. CAUSE OF ACTION

ERISA 502 (a) (1) (b)

Brief description of cause:

Denial of LTD and Retirement Benefits

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
April 30, 2008

SIGNATURE OF ATTORNEY OF RECORD

Table Of Contents

Exhibit    A    Long Term Disability (LTD) and Long Term Care ( LTC)
                Summary Plan Description (SPD)
                Stanford University, Effective May 17, 2001

Exhibit    B    Stanford University Administrative Guide Memo 27.7
                Disability Plans

Exhibit    C    What you Should Know About Your Retirement Plan

Exhibit    D    California Unemployment Insurance Appeals Board Decision
                Deborah R. Schissell, Administrative Law Judge

Exhibit    E    California Unemployment Insurance Appeals Board Decision
                Susan L. Bloom, Administrative Law Judge

Exhibit    F    Workers Compensation Appeals Board State Of California
                Opinion and Order Granting Reconsideration and Decision After
                Reconsideration Dated October 10, 2007

Exhibit    G    Social Security Administration Disability Notice Of Award
                Dated March 29, 2004

Exhibit    H    Bill for Medical Treatment Dr. Jules M. Tanenbaum , Phychiatry
                Bill for Pyschotherapy visits Gloria J Baxter LCSW

Exhibit    I    Vita Administration Company RE: Cobra Continuation Coverage

Exhibit    J    Letter to U S Department Of Labor Dated September 12, 2006
                Letter to U S Department Of Labor Dated September 29, 2006
                Letter to U S Department Of Labor Dated July 19, 2004

Exhibit    K    Letter to U S Department Of Energy Samuel W. Bodman, Secrectary
                Letter From U S Department Of Energy Patricia M. Dehmer

Exhibit    L    Letter To U S Department Of Labor/EBSA Ms. Ann L. Combs
                Assistant Secretary

Exhibit    M    Letter From Stanford University Dated May 1, 2004
                Appeal Denial Letter Susan Cunningham, Benefits Programs Manager

| Exhibit | N | Letter from Stanford University    July 3, 2003 |
|---------|---|---|
| Exhibit | O | Letter form Sedgwick CMS Dated February 19, 2004 |
| Exhibit | P | Letter From Sedgwick CMS Dated February 11, 2003 |
| Exhibit | Q | Letter from Sedgwick CMS Dated July 22, 2003 |
| Exhibit | R | Letter From Sedgwick CMS Dated October 14, 2003 |
| Exhibit | S | Letter From   Sedgwick CMS Dated November 25, 2005 |
| Exhibit | T | Copy Of Back pay Check from Stanford Linear Accelerator Center Dated July 22, 2003 and October 13, 2003 |
| Exhibit | U | Copy of Plaintiff's email to Defendants Attorney Gordon & Rees |
| Exhibit | V | Letter From Zurich Insurance Dated March 30, 2008 |
| Exhibit | X | Notice Of Medical Evaluation Dated March 31, 2008 |
| Exhibit | Y | Notice of re-evaluation from Dr. Waldman  dated March 30,2008 |

# Long Term Disability (LTD) and Long Term Care (LTC)

## Summary Plan Description (SPD)

*Stanford University*

*Effective May 17, 2001*

EXHIBIT __A__

# Contents

**Long Term Disability (LTD)**
**Introduction to Your Long Term Disability (LTD) Benefits**

**How Your LTD Coverage Works**
LTD Options ........................................................................................................................ 2
Coverage Start Date ........................................................................................................... 2
Disability Defined ............................................................................................................... 2
Salary Defined .................................................................................................................... 3
Cost .................................................................................................................................... 3

**Calculating Your LTD Benefit**
Benefit Amount ................................................................................................................... 4
Other Sources of Disability Income .................................................................................... 4

**LTD Benefit Payment**
When Benefits Begin .......................................................................................................... 6
How Long Benefits Continue .............................................................................................. 6
Limited Benefits ................................................................................................................. 7
When Benefits End ............................................................................................................. 7

**Applying for LTD Benefits**
How to File Claims .............................................................................................................. 8
If a Claim Is Denied ............................................................................................................ 8

**Situations Affecting Your LTD Benefits**
Recurring Disabilities ......................................................................................................... 9
Approved Rehabilitative Employment ................................................................................. 9
Delay in Receiving Benefits ............................................................................................... 9
If You Take a Leave of Absence ......................................................... Error! Bookmark not defined.

**Disabilities Not Covered**

**When Coverage Ends**

**Long Term Care**
**An Introduction to Your Long Term Care (LTC) Benefits**

**How Your LTC Coverage Works**
Who Is Eligible ................................................................................................................... 13
Evidence of Insurability (EOI) ............................................................................................ 13
Cost .................................................................................................................................... 13
Additional Available Resources .......................................................................................... 14

**Your Coverage Options**

**How LTC Pay Benefits**
Qualifying Impairment Defined ........................................................................................... 16
Waiting Period .................................................................................................................... 17
What is Covered .................................................................................................................. 17

# Introduction to Your Long Term Disability (LTD) Benefits

Educated Choices offers you long term disability coverage to provide partial income replacement in the event you become disabled due to an illness or injury. Your LTD coverage is designed to provide partial salary replacement if your disability lasts more than 90 consecutive days.

Your LTD benefit supplements other disability income sources available to you such as:

- Social Security;

- Workers' Compensation;

- Short Term Disability (STD):

    — Stanford Voluntary Disability Insurance [VDI];or

    — State Disability Insurance [SDI].

As long as you meet the Educated Choices eligibility requirements described in the <u>Overview and Administrative Information</u> booklet, you may choose from the coverages available.

Please read this booklet carefully and keep the material as a reference. If you have questions, contact **BenefitSU**, the SLAC Benefits Department, or you may call the carrier directly. See the <u>Overview and Administrative Information</u> booklet for carrier phone numbers. Additional information is also available on the **BenefitSU** website at http://benefitsu.stanford.edu. These additional materials, along with the information described here constitute your SPD.

**How Long Coverage Continues**
When Coverage Ends ................................................................................................................................ 18
If You Die................................................................................................................................................... 18
Portability.................................................................................................................................................. 18

# How Your Long Term Disability (LTD) Coverage Works

Your LTD coverage works with other sources of disability income to continue a percentage of your pay if you become totally disabled. This section provides a brief overview of how LTD coverage works.

## LTD Options

You can enroll for LTD coverage when you become eligible and you can change your level of coverage during open enrollment each year. The following LTD options are available to you:

- 50% of your pre-disability monthly earnings; or

- 66-2/3% of your pre-disability monthly earnings.

You receive enough Choice Dollars to select the 66-2/3% option, however, you can select the 50% option instead. You must select some level of LTD coverage.

See Salary for a complete definition of what is included.

## Coverage Start Date

Your coverage begins on either of the following days:

- On the first full day of regular active employment; or

- On the day you return to work if you are returning from a leave of absence.

If you are not at work on the date your LTD coverage is scheduled to begin because you are sick or disabled, your coverage is effective on the date you return to work.

## Disability Defined

You are considered totally disabled and eligible for LTD benefits if you are under the regular care of a physician and:

- During the first 15 months of your disability (including the 90-day waiting period), you are completely unable to perform the regular and customary duties of your job; and

- After the first 15 months of your disability, you are completely unable to perform the duties of any job for which you may be qualified through education, training or experience.

In addition, you must not be receiving income from any other job or occupation (except approved rehabilitative employment). See the Approved Rehabilitative Employment section of this booklet for more information.

## Salary Defined

Your LTD benefit is based on your monthly earnings. Your monthly earnings include your base salary (if you are a staff employee) or appointment salary (if you are a faculty member). Salary includes your:

- Paid vacation leave;

- Paid holidays;

- Paid sick leave; and

- Other forms of paid time off.

Your salary does not include overtime pay, shift pay, one time payments or cash awards, Stanford payments for employee benefits such as Choice Dollars or pension contributions, or other forms of extra compensation. Your salary is the greater of:

- Your salary for the last completed payroll period immediately before the effective date of your disability benefits; or

- Your salary for the last completed payroll period immediately before the day your disability began.

Retroactive changes in basic or appointment salary are included when determining your monthly earnings for LTD benefit purposes.

## Cost

Through Educated Choices, Stanford provides Choice Dollars to pay the full cost of the 66-2/3% option. If you choose the 50% coverage option, you will have leftover Choice Dollars which can be applied to other before tax benefits. See the Overview and Administrative Information booklet for more information about Choice Dollars.

# Calculating Your Long Term Disability (LTD) Benefit

Here is how your LTD benefit is calculated.

## Benefit Amount

You may be eligible for a LTD benefit of 50% or 66-2/3% of your pre-disability monthly earnings. Your LTD benefit is reduced by certain wage continuation and other payments you may receive or may be entitled to receive. See the Other Sources of Disability Income section in this booklet for more information. LTD benefits are taxable income.

### Benefits for a Partial Month
If your disability period lasts less than a full month, your benefit is 1/30th of your monthly LTD benefit, multiplied by the number of days you are disabled.

### Adjustment of Benefits
If you receive an over- or underpayment, your LTD benefit is adjusted accordingly to account for the error. If you are underpaid, subsequent payments are increased. If you are overpaid, subsequent payments are reduced or eliminated until the excess if repaid. If you are overpaid, you may want to repay the plan directly to ensure a continuous payment of LTD benefits.

## Other Sources of Disability Income

Your LTD benefit is reduced for any other source of income you or members of your immediate family receive (or are entitled to receive) because of your disability. Other sources of income include:

- Social Security benefits. This includes benefits paid to you directly and those paid to your dependents because you are disabled. However, dependent benefits are not reduced if you are divorced and the benefits are paid to your ex-spouse or dependents who live with your ex-spouse.

- Your Stanford University retirement benefits. This is the amount you receive based on the retirement annuity payment option you elect. If you elect a lump-sum distribution, the offset is made as if you had elected an annuity payable over ten years.

- Statutory occupational disability income benefits—such as Workers' Compensation.

- Benefits under non-occupational disability benefits law or similar law, such as Stanford's VDI benefits.

- Other group disability income benefits.

- Income from any employer or from self employment (except for approved rehabilitative employment).

- Amounts due as a result of a third party causing the injury that resulted in your disability.

If you do not receive benefits from any of the other sources listed by the time your LTD benefit begins, but you expect to receive them, your benefit is reduced (if necessary) based on an estimate of what you expect to receive. If you are eligible for but you do not receive payments from a Stanford retirement plan by the time your LTD benefit begins, your LTD benefit is not reduced; LTD benefits are reduced only by amounts you actually receive from the Stanford retirement plans.



# An Introduction to Your Long Term Care (LTC) Benefits

Stanford offers you and your eligible family members the opportunity to enroll in Long Term Care (LTC) coverage. LTC helps pay many day-to-day expenses for elderly or disabled care (e.g., nursing homes) not covered by medical plans, and there is no limitation on pre-existing conditions. Even though you pay the total cost of this coverage on an after tax basis, you do benefit from group rates, and your premiums are deductible if you qualify to deduct them as medical expenses on your tax return.

Once you or a family member purchase coverage, that coverage cannot be terminated or canceled for any reason (other than failure to pay premiums or reaching the lifetime maximum benefit).

Please read this area of the site carefully, share it with eligible dependents, and keep the material as a reference. If you have questions, contact **BenefitSU** or the SLAC Benefits Department, or you may call the carrier directly.

Additional information is also available from the following:

- The **BenefitSU** website at http://benefitsu.stanford.edu;

- The Long Term Care information booklet available from **BenefitSU**. It provides more information on covered services, exclusions and limitations, coordination of benefits, and when your coverage ends.

- The carrier, CNA Insurance Company. Contact CNA at (800) 528-4582 or visit the website at www.ltcbenefits.com (use the Stanford password: stanfordgltc).

These additional materials, along with the information described here constitute your SPD.



# How Your Long Term Care (LTC) Coverage Works

Here is how your LTC coverage works.

## Who Is Eligible

As long as you meet the eligibility requirements described in the Overview and Administrative Information booklet, you may choose from the coverages available. Coverage is optional. You must be actively at work when you enroll or apply for coverage.

LTC coverage is also available to your spouse or same-sex domestic partner, parents, parents-in-law, grandparents, and grandparents-in-law. LTC coverage is not available to children.

**Please note**: Even if you do not enroll for coverage, your eligible family members may apply for coverage.

## Evidence of Insurability (EOI)

If you are a new employee and enroll within the 31-day enrollment period, you do not have to provide Evidence of Insurability (EOI). Your eligible family members, however, must always provide EOI to enroll. Coverage is not effective until the carrier approves the EOI.

If you miss the 31-day enrollment period, you must wait until the next Open Enrollment. See the Overview and Administrative Information booklet for more information. If you enroll during the Open Enrollment, you must provide EOI and receive the carrier's approval before coverage begins.

Contact **BenefitSU** or the SLAC Benefits Department for application forms and coverage information kits to enroll your eligible dependents.

## Cost

You pay 100% of the cost for LTC coverage with after tax dollars. You may not use Choice Dollars to purchase LTC coverage.

Your per-pay-period cost for LTC insurance is based on the amount of coverage you select and the age at which you or other eligible family members purchase coverage. Your and your spouse's (or same-sex domestic partner's) payments are handled through direct payroll deduction. Invoices for other family members are sent either to you or the insured. You may pay either:

• Monthly (via an automatic checking or savings account deduction); or

• Quarterly, semi-annually, or annually (via direct bill and payment).

The table of costs is available from **BenefitSU** or the SLAC Benefits Department.

### Level Premiums

Your premium is based on your age at the time of your initial enrollment. Your premium does not increase as you get older, unless you increase your coverage or the carrier increases the rates for everyone in your entry age group due to plan experience or inflation.

***Premiums While Receiving Benefits***
If you receive benefits, you do not have to pay a premium (starting with the first premium due after you complete the waiting period):

• While you receive benefits; or

• For six months after you stop receiving benefits.

***Tax Information***
Subject to IRS limitations, LTC insurance premiums and expenses that are not covered by insurance or any other plan may be deductible as an itemized medical expense on your tax return. LTC benefits received by the insured may be tax-free to the recipient, subject to IRS limitations. For more information, consult a professional tax advisor.

## Additional Available Resources
If you would like additional information or counseling, call the California Department of Insurance for a consumer guide to LTC at (800) 927-HELP. Or, you may call the LTC carrier, CNA, at (800) 528-4582.

# Long Term Disability (LTD) Benefit Payments

This section highlights when benefits begin, how long they continue, certain limits that apply, and when benefits end.

## When Benefits Begin

Your LTD benefit begins after you are disabled for 90 consecutive days (the elimination period). If you are a participant and you become disabled while you are on an unpaid leave of absence, the 90-day waiting period starts the day after your original leave was scheduled to end.

If you return to work during your elimination period but again become disabled, you must satisfy a new elimination period. VDI may be payable during the elimination period. Contact **BenfitSU** or the SLAC Benefits Department for more information.

## How Long Benefits Continue

If you meet the eligibility requirements before age 62, are under the continuous care of a physician, and meet the plan definition of disabled, your LTD benefit may continue until you recover or reach age 65 (whichever occurs first).

If you meet eligibility requirements at or after age 62, your LTD benefit may continue until you recover or for the length of time shown in the chart below (whichever is earlier).

| Age When Disability Begins | Maximum LTD Payment Period* |
|---|---|
| Age 62 but not yet 63 | 3 years, 6 months |
| Age 63 but not yet 64 | 3 years |
| Age 64 but not yet 65 | 2 years, 6 months |
| Age 65 but not yet 66 | 2 years |
| Age 66 but not yet 67 | 1 year, 9 months |
| Age 67 but not yet 68 | 1 year, 6 months |
| Age 68 but not yet 69 | 1 year, 3 months |
| Age 69 or over | 1 year |

*The maximum LTD payment period is based on your age when you become disabled—not your age at the time LTD benefits begin. In addition, this schedule may be adjusted as permitted by applicable law.

## Limited Benefits

Certain limits apply if your disability is related to alcoholism, substance abuse, or a mental or nervous disease or disorder. If this is the case and you are totally disabled but not confined to a hospital:

- Your benefit continues for up to 24 months; and

- A 24-month maximum applies to all periods of disability due to any one or more of these conditions.

You may receive a benefit after the 24-month period if you are engaged in an approved rehabilitative employment arrangement. See Approved Rehabilitative Employment for details.

## When Benefits End

Your LTD benefit continues until the earliest of the following:

- You are no longer totally disabled according to the LTD benefit definition;

- You are no longer under the care of a physician;

- You fail to have a medical exam within 30 days as requested by the Plan Administrator;

- You refuse to follow your medical provider's treatment plan;

- You refuse to provide information the Plan Administrator requested in writing;

- There is no objective medical evidence supporting your disability (as defined by the LTD plan);

- Any applicable limitations, as described here apply to your situation;

- You exhaust the maximum LTD payment period as described under the How Long Benefits Continue section in this booklet; or

- You die.

Remember, however, that you may be eligible for benefits but receive no payments if applicable benefit offsets are large enough or if you have been previously overpaid.

# Applying for Long Term Disability (LTD) Benefits

You need to apply to receive LTD benefits.

## How to File Claims

In most cases, as you approach the end of 90 consecutive days of disability, you receive a claim form from Preferred Works, the claims administrator. Complete the form and forward it to your physician or licensed practitioner. He or she needs to complete the Attending Physician's Statement. Then, you or your physician should mail the form to **BenefitSU** or the SLAC Benefits Department.

**BenefitSU**
655 Serra Street
Stanford, CA 94305-6110
(877) 905-2985
benefitsu@stanford.edu

SLAC Benefits Department
2575 Sand Hill Road
Menlo Park, CA 94025
(650) 926-2357

Your claim is forwarded to the LTD benefit Claims Administrator, Preferred Works. Once your claim is received, Preferred Works acknowledges and evaluates your claim.

## If a Claim Is Denied

If disagreements arise regarding your claim, every effort is made to resolve them quickly and informally. However, if that is not possible, formal procedures are in place so that you may appeal a decision. See the <u>Overview and Administrative Information</u> booklet for details.



# Situations Affecting Your Long Term Disability (LTD) Benefit Payments

Certain situations could affect your LTD benefit payments.

## Recurring Disabilities

If you receive LTD benefits, recover, and then are disabled again, your second disability is considered a continuation of the first so long as it is due to the same or related causes and are separated by at least one day, but not more than 11 consecutive months of continuous active employment. In other words, if the two disabilities are due to unrelated causes and are separated by 12 or more months of continuous employment at your regularly scheduled, pre-disability rate, then the second disability is not considered a continuation of the first.

## Approved Rehabilitative Employment

While you receive LTD benefits, you are encouraged to seek and accept appropriate part-time rehabilitative employment to help you return to full-time employment. You must submit rehabilitative employment arrangements to the claims administrator for approval to continue receiving LTD benefits during your rehabilitative employment.

If approved, any pay you receive from the rehabilitative employment reduces your LTD benefit. However, the combination of your LTD benefit and your rehabilitative employment pay may equal as much as 100% of your pre-disability earnings, rather than the 50% or 66-2/3% that your LTD benefit alone replaces. You can receive LTD through an approved rehabilitation plan for up to a maximum of 12 months, and not beyond your 65th birthday.

## Delay in Receiving Benefits

If you do not apply for benefits or do not provide the necessary information on your claim form, your benefit is delayed and may be denied. Also, if your address changes while you are receiving benefits, be sure to notify the claims administrator to prevent a delay or an interruption of your payments.

# Disabilities Not Covered

You are not eligible for LTD benefit payments if your disability:

- Is caused by declared or undeclared war or act of war, insurrection, rebellion, or participation in a riot.

- Is caused by:

  — an intentionally self-inflicted injury or attempted suicide, while sane or insane; or

  — the use of hallucinogenic or narcotic drugs (except when legally prescribed by a physician).

- Occurs due to active participation in an illegal occupation, assault, felony, or a violent disorder.

- Begins when you are not a benefit participant.

- Is not substantiated by the examining physician selected by the claims administrator under the rules of the LTD plan.

- Results from a mental illness, nervous disorder, alcoholism, or a drug addiction after the first 24 months of your disability (except as described in the Limited Benefits section of this booklet).

- Results from a pre-existing medical condition for which, during the six-month period immediately before the effective date of your Stanford employment, you received medical care or treatment (including taking prescribed medicines). Pre-existing exclusions from coverage end once you complete either two consecutive years of continuous employment with Stanford, or you go a year without receiving treatment for the pre-existing medical condition.

- Results from an illness or injury for which you are not under the regular and continuous care and treatment of a doctor of medicine, doctor of osteopathy, or other licensed practitioner operating within the scope of his or her practice and under the laws of the practitioner's jurisdiction (unless such regular and continuous care and treatment are not medically indicated).

- Is caused by employment in any other job or occupation (other than Stanford).

- Results from an act or omission of another person or organization (unless you agree in writing that the proceeds from any award you receive will be used to offset any past or future LTD benefits). When you accept LTD benefit payments, you agree to these terms.

# When Coverage Ends

Your ability to apply for LTD benefit payments ends:

- On the date the Plan is terminated;

- On the date you are no longer eligible for coverage (your status changes from eligible to non-eligible employee);

- On the date your employment with Stanford ends for any reason other than disability;

- When your employment appointment drops below 50% FTE; or

- On your date of death.

If your employment terminates after you have become totally disabled, your eligibility for LTD benefits will not be terminated with the end of your employment except if Stanford no longer offers LTD benefits. Benefit payments end upon your death.

If you have questions about how your LTD disability benefits are reduced by other payments, contact Preferred Works, the Claims Administrator, at (800) 939-4911. Or, you may contact **BenefitSU** or the SLAC Benefit Department.

# **Your Coverage Options**

LTC is routine care that may be necessary for an extended period of time due to a disabling illness, accident, or age. LTC is often provided by a nursing home, adult day care center, an in-home nurse, or through a homemaker program.

LTC insurance is expensive, but no other insurance is designed to cover most of these services. Medical insurance pays a limited amount for routine care. LTD insurance pays a portion of your lost income. Medicare pays a small percentage of the costs, and MediCal can be used only if no other assets are available.

The chart below highlights the four LTC coverage options. Each eligible person may choose a different level of coverage.

| Benefit | Coverage Option | | | |
|---|---|---|---|---|
| | Option 1 | Option 2 | Option 3 | Option 4 |
| Maximum daily benefit for nursing home care | $90 | $120 | $150 | $200 |
| Maximum daily benefit for community-based care | $67.50 | $90 | $112.50 | $150 |
| Yearly maximum respite benefits | $1,890 | $2,520 | $3,150 | $4,200 |
| Temporary bed-holding benefit* | $1,890 | $2,520 | $3,150 | $4,200 |
| Lifetime maximum benefit | $164,250 | $219,000 | $273,750 | $365,000 |

*The temporary bed-holding benefit may not exceed the maximum daily benefit for nursing home care, up to the calendar year maximum.



# How Long Term Coverage (LTC) Pays Benefits

LTC pays benefits for various types of care. As long as there is a "qualifying impairment," benefits begin after the waiting period.

## Qualifying Impairment Defined

To be eligible for a benefit, you or your family member must have a "qualifying impairment." A qualifying impairment can include an "activity of daily living" or "cognitive impairment" as described below.

- You are considered to have an activity of daily living impairment if a licensed health care practitioner certifies that you are unable to perform (without substantial assistance or supervision from another individual) at least two of the activities of daily living for a period of 90 days. The practitioner must certify that you are unable to perform the activities due to a loss of functional capacity, or due to a cognitive impairment that requires substantial supervision to protect your health. Activities of daily living include:

  — Ambulating (walking with or without braces, a walker, a cane, or other walking devices).

  — Bathing (washing oneself on a routine basis in the tub, shower, or by sponge bath).

  — Continence (voluntarily controlling both bowel and bladder functions or, in the event of incontinence, the ability to maintain a reasonable level of personal hygiene). The insured is considered continent even if he or she cannot voluntarily control both bowel and bladder functions but is able to maintain a reasonable level of personal hygiene.

  — Dressing (putting on and taking off all necessary and appropriate items of clothing including braces or artificial limbs).

  — Eating (getting nourishment into one's body once it has been prepared and made available).

  — Toileting (getting to and from and on and off the toilet and performing the associated personal hygiene tasks).

  — Transferring (moving in and out of bed or chair and changing positions such as from bed or chair to standing).

- You are considered to have a cognitive impairment if your intellectual capacity requires substantial supervision by another individual because you engage in behavior that poses a health or safety hazard to yourself or others.

## Waiting Period

As long as you qualify for benefits, you must complete a 90-day waiting period before benefits begin. The waiting period starts on the day the carrier receives written notice of the claim. For benefits to become payable after the waiting period, you must have had a qualifying impairment during the entire 90 days. The waiting period is reduced by the number of days LTC is received during the six months prior to the claim being received.

If you receive LTC benefits and then no longer need benefits for at least six months, you must complete another 90-day waiting period before your benefits become payable again and premiums are again waived.

## What is Covered

LTC benefits include:

- A variety of home health agency services, personal care, hospice care, homemaker services, residential care, adult foster care, and nursing home care;

- Waiver of premiums during the period benefits are being received and for some time afterward;

- A temporary bed-holding benefit in case you must temporarily leave a nursing home care facility to be hospitalized (or for another reason);

- A respite care benefit to provide time off for a day-to-day care giver; and

- A refund of premiums under certain circumstances if you should die (see the If You Die section of this booklet for details).

- A benefit account feature that allows you to stop paying premiums and still continue coverage, subject to plan restrictions.

# How Long Coverage Continues

Under certain circumstances, your LTC coverage ends.

## When Coverage Ends
Coverage ends in the event:

- The insured discontinues payments;

- The insured reaches the maximum benefit;

- The insured dies; or

- The benefit is terminated.

## If You Die
If the insured dies on or before age 65 while coverage is in effect, the carrier refunds the premiums already paid, less any amount of any benefits received. If you die after age 65, the portion of premiums refunded decreases by 10% each year. If you die after age 74, no premiums are refunded.

## Portability
If you leave Stanford, you or your eligible family members can continue LTC coverage with the same benefit provisions, provided:

- You notify the carrier in writing within 31 days of your termination that you wish to continue coverage;

- You continue to pay your premiums; and

- The carrier continues to offer this coverage.

If you choose to continue your coverage, you pay premiums directly to the carrier. See the Overview and Administrative Information booklet for carrier addresses and phone numbers.



# Disability Benefit Plans

# EXHIBIT ___B___

**Authority**     This Guide Memo was approved by the Executive Director of Human Resources.

**Applicability**   This policy applies to those groups identified as eligible for each of the disability benefit plans described in this policy.

**Summary**     Section headings are:

1. SICK LEAVE
2. WORKERS' COMPENSATION
3. SHORT TERM DISABILITY PLAN
4. LONG TERM DISABILITY BENEFITS PLAN
5. SOCIAL SECURITY DISABILITY BENEFITS

Important information regarding the scope and use of these disability benefit plans is included in Guide Memo 22.6, Sick Leave and Other Paid Disability Leave, http://adminguide.stanford.edu/22_6.pdf, and in the relevant plan brochures available from BenefitSU at benefitsu@stanford.edu or 650/736-2985.

## 1. SICK LEAVE

A formal sick leave plan is provided for regular staff employees. The purpose of the plan is to provide income continuation during short periods of disability and to supplement the benefits from other disability plans during longer absences from work.

## 2. WORKERS' COMPENSATION

All employees of the University, including students, staff, and faculty, are covered by Workers' Compensation. The purpose of this coverage is to provide partial income continuation during absences resulting from work-connected injuries or illnesses, and payment of necessary medical, surgical, and hospital services for such injuries and illnesses. The University pays the full cost of Workers' Compensation coverage. Details regarding claims procedures, accident reports, amounts of benefits and related matters may be obtained from the Risk Management Office, 650/723-7400, http://www.stanford.edu/dept/Risk-Management/docs/workcompben.shtml. Also, Guide Memo 25.6, Accident and Incident Reporting, http://adminguide.stanford.edu/25_6.pdf, has additional information about Workers' Compensation.

## 3. SHORT TERM DISABILITY PLAN

Faculty and staff based in California are covered for short-term disabilities by either the University's voluntary disability insurance plan (VDI) or State Disability Insurance (SDI). The University's VDI plan is state-approved to take the place of SDI by providing benefits that are better than those of the state's plan. The VDI plan provides partial income continuation for periods of disability of up to one year. This plan is described in full in "Short Term Disability Benefit Plan," a brochure received by all new employees and available on request from BenefitSU at benefitsu@stanford.edu or 650/736-2985.

## 4. LONG TERM DISABILITY BENEFITS PLAN

This plan, usually called LTD, provides partial income continuation during longer periods of disability. LTD benefits start after a disability period of 90 days and are fully paid for by the University. After a disability period of 15 months, the plan's benefits are more restricted because a more stringent definition of "disability" is used. The Summary Plan Description for the "Long Term Disability Plan" provides information about coverage, definition of disability, and benefits. It is given to each newly appointed faculty member and regular staff employee, and also is available on request from BenefitSU at benefitsu@stanford.edu or 650/736-2985.

5. **SOCIAL SECURITY DISABILITY BENEFITS**

The Social Security program provides income benefits when a covered participant is totally disabled by a condition that will last at least a year. Payments start with the sixth month of a disability, following processing of a claim with a local office of the Social Security Administration. Also, after an individual has received disability payments for two years from Social Security, Medicare benefits are available to the disabled person. Information about disability benefits from Social Security are available from the local Social Security Offices.

) VESTING.............................. 21
.................................................... 21
o participate in your
t plan?......................................... 22
and how does it work?............. 23
otected as part of your
.................................................... 24
uture benefits?........................... 25
ervice credit if you leave your
.................................................... 25
ienefit accruals (and your
ou retire and later go back to
.................................................... 26
v does it work?........................... 27
sting schedules?.......................... 30

.................................................... 31
ayment of your benefit?............. 31
ermit you to take payment?....... 32
iyment?........................................ 33
benefits be paid?......................... 34

ENEFITS TO YOUR
.................................................... 35
enefit upon death?..................... 35
 and survivor annuity
.................................................... 36

What is a qualified preretirement survivor annuity
   (QPSA)? ........................................................................ 36
What survivor benefit rules apply to most defined
   contribution plans (such as 401(k) plans)?................ 37
Where can you get more information about QJSA
   and QPSA rights?........................................................ 37

CHAPTER 6
MAKING A BENEFIT CLAIM AND
   FILING SUIT UNDER ERISA........................................ 39
   How do you make a claim for benefits?...................... 39
   May you sue under ERISA?........................................ 40
   What is the role of the Department of Labor if you
      sue under ERISA?................................................... 42
   May your employer fire you for asserting your
      rights under ERISA?................................................ 42

CHAPTER 7
DIVIDING YOUR RETIREMENT BENEFITS FOR
   FAMILY SUPPORT........................................................ 43
   Can your retirement benefits be attached for family
      support?.................................................................... 43
   What requirements must be met for a domestic
      relations order to be qualified? ................................ 44

CHAPTER 8
PROTECTING YOUR PLAN'S ASSETS FROM
   MISMANAGEMENT AND MISUSE.............................. 45
   What protections do the fiduciary rules of ERISA
      provide?.................................................................... 45
   When can you choose your own investment?........... 46

**EXHIBIT** _C_

*Looking Out for #2: A Married*
*:standing Your Benefit Choices*
*:ned Contribution Plan;*

*Looking Out for #2: A Married*
*:standing Your Benefit Choices*
*:ned Benefit Plan.*

in effect for participants who com-
d leave) on or after August 23, 1984.
are different if you are the surviving
employment before that date.

▶ **CHAPTER 6**

# MAKING A BENEFITS CLAIM AND FILING SUIT UNDER ERISA

> This chapter outlines how and under what circumstances you can make a benefit claim. It tells you what appeal procedures to follow if your claim for benefits is denied and describes your rights to pursue a lawsuit. The following questions are addressed:
>
>   ▸   **How do you file a claim for benefits?**
>
>   ▸   **What do you do if your claim is denied?**
>
>   ▸   **May you sue the plan?**
>
>   ▸   **What are the grounds for legal action?**

## How do you make a claim for benefits?

Under ERISA you have a responsibility to file a claim for benefits due under your plan. ERISA requires all plans to have a reasonable written procedure for processing your claim for benefits and for appealing if your claim is denied. The summary plan description (see Chapter 2) should contain a description of your plan's claims procedure. If you believe you are entitled to a benefit from a retirement plan, but your plan fails to set up a claims procedure, you may present the claim to the plan administrator.

If your claim for benefits is denied, the plan must notify you in writing - generally within 90 days after receipt of the

claim - of the reasons for the denial and the specific plan pro-
visions on which the denial is based. If the plan denies your
claim because the administrator needs more information to
make a decision, the administrator must tell you what infor-
mation is needed. Any notice of denial must also tell you how
to file an appeal. If special circumstances require your plan to
take more time to examine your request, it must tell you within
90 days that additional time is needed, why it is needed, and
the date by which the plan expects to make a final decision. If
you receive no answer at all in 90 days, this is treated the
same as a denial, and you can proceed to appeal.

   You must be allowed at least 60 days to appeal any denial.
After receiving your appeal, the plan generally must issue a
ruling within 60 days, unless the plan provides for a special
hearing. If the plan notifies you that it must hold a hearing, or
that it has other special circumstances, it may have an addi-
tional 60 days.

   The plan must furnish you with the final decision on your
appeal and the reasons for the decision with references to the
relevant plan documents. If you disagree with the final deci-
sion, you may then file a lawsuit seeking your benefit under
ERISA, as explained below. But courts generally require that
you complete all the steps available to you under your plan's
claims procedure in a timely manner before you seek relief
through a lawsuit. This is called "exhausting your adminis-
trative remedies."

## May you sue under ERISA?

- As a plan participant or beneficiary, you may bring a civil
  action in court to:

- Recover benefits due you and enforce your rights under the
  plan.

▸ Get access to plan documen
  your plan administrator does
  within 30 days of your writte:
  plan administrator personall
  (unless the failure results fror
  yond his or her control).

▸ Clarify your right to future be

▸ Get appropriate relief from a

▸ Enjoin any act or practice tha
  or any provision of Title I of
  and disclosure, participation,
  provisions, or to obtain other

▸ Enforce the right to receive a
  upon termination of employm

▸ Obtain review of a final actio
  restrain the Secretary from tak
  or to compel the Secretary to

▸ Obtain review of any action c
  adversely affects you.

   You may file your lawsuit unde
court. If you seek benefits or clarif
benefits, you may file an alternative
in its discretion may order either pai
plan fiduciaries/plan sponsor) to pa;
costs, when a participant or benefic

## What is the role of the Department of Labor if you sue under ERISA?

The Secretary of Labor may directly bring a civil action under ERISA to enforce the fiduciary provisions of ERISA. The Secretary also has limited authority to bring a civil action to enforce ERISA's participation, vesting, and funding standards with respect to a tax-qualified plan. In addition, the Secretary of Labor has discretion to intervene in lawsuits filed in Federal court to enforce rights under ERISA. A participant or beneficiary who brings an action in Federal court claiming a breach of fiduciary duty must provide a copy of the complaint to the Secretary of Labor and the Secretary of the Treasury by certified mail. It is not necessary to provide such notice to any government agency if you bring a lawsuit solely to recover benefits under the plan.

## May your employer fire you for asserting your rights under ERISA?

ERISA prohibits employers from promising retirement benefits and then firing or disciplining workers to avoid paying a benefit. To that end, ERISA says it is unlawful for an employer to discharge, fine, suspend, expel, discipline, or discriminate against you or any beneficiary for the purpose of interfering with the attainment of any right to which you may become entitled under the plan or the law.

Also, employers cannot take any of these steps against you for exercising any of your rights or prospective rights under a plan or ERISA, or for giving information or testimony in any inquiry or proceeding relating to ERISA. Moreover, the use of force or violence to restrain, coerce, or intimidate you for the purpose of interfering with your rights or prospective rights is punishable by a fine of up to $10,000 and/or up to one year in prison.

## ► CHAPTER 7

## DIVIDING YOUR RI BENEFIT FOR FAM

This chapter describes the rig the parties and the plan if a sp or other dependent seeks a p ment benefits. It addresses th

- ► What is a Qualified Dome

- ► What is an alternate pay

- ► When can an alternate pa under QDRO?

## Can your retirement ber family support?

In general, your retirement be from you by people to whom you a limited exception, however, wh Thus, a State authority with juris award part or all of your benefit to child, or other dependent by issu lations order, which must be hon named in such an order is calle award can be made in a variety c

CALIFORNIA UNE**J**LOYMENT
INSURANCE APPEALS BOARD

OAK**J**ND OFFICE OF APPEALS
Date Mailed:

In the matter of:

**WARD NORWOOD**
SSN: 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
    Claimant

EDD: 2040
BYB: 05/02/2002     Appellant: Claimant

Case No.: 814049

OCT 28 2002

Issue(s): FRE, 2706-1

Date Appeal Filed: July 09, 2002

Date of
Hearing(s)     Parties Present
Oct 22, 2002    Claimant, Department

## DECISION DISMISSING APPEAL DUE TO WITHDRAWAL

The appellant applied to withdraw the appeal.

California Code of Regulations, title 22, section 5050 provides upon an application to withdraw
an appeal an administrative law judge shall order the appeal dismissed.

The appeal is dismissed.

**/s/**
_____
Deborah R. Schissell, Administrative Law Judge

NOTICE OF RIGHTS TO REINSTATE
The appellant may apply to reinstate the appeal within 20 calendar days
from the mailing date shown above.  For further information on reopening
an appeal, see the enclosed form.

OAKLAND OFFICE OF APPEALS
1515 Clay St Ste 902
OAKLAND, CA   94612-1413

**PHONE: (510) 622-3900**
**FAX: (510) 622-3929**

EDWARD NORWOOD
35156 LIDO BLVD UNIT J
NEWARK, CA   94560-1184

**EXHIBIT** _____

CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD



**OAKLAND OFFICE OF APPEALS**     **(510) 622-3900**
1515 Clay St Ste 902
OAKLAND CA 94612

| | |
|---|---|
| STANFORD UNIVERSITY<br>Insurer | Case No. **798678 (DC)** |
| EMPLOYMENT DEVELOPMENT DEPARTMENT<br>Insurer-Appellant | Date Appeal Filed: 08/21/2002 |
| EDWARD NORWOOD, Claimant<br>SSN: 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 | EDD:  2040     **EXHIBIT** D |

**Date and Place of Hearing(s):**
(1)  10/22/2002    Fremont

**Parties Appearing:**
Claimant, Department

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 20 calendar days from the date of mailing shown below. See the attached "Notice to Parties" for further information on how to file an appeal. If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-480-3287.

**Deborah R. Schissell**, Administrative Law Judge

OCT 28 2002

Date Mailed:

**Case No.:  798678**                     **Oakland Office of Appeals**
CLT/PET:  Edward Norwood              ALJ:  D. Schissell
Parties Appearing:  Claimant, Department
Parties Appearing by Written Statement:  None

---

## STATEMENT OF FACTS

The Department appealed from a voluntary plan denial of coverage,
dated August 14, 2002, based on the voluntary plan's conclusion that
the claimant's disability commenced several months after his
employment was terminated.

The claimant first became unable to work due to his medical condition
on February 20, 2002.  He was off work due to his medical condition
from February 20 through March 6, 2002.  The claimant returned to
work from March 7 through March 11, 2002, and then again stopped
working (in the middle of the day on March 11, 2002) due to his
medical condition.  At that time, the claimant was scheduled to return
to work on March 18, 2002.  When the claimant returned to the
workplace on March 18, 2002, he was immediately placed on
administrative leave.  At that time, the claimant and his psychologist
both believed that the claimant was not medically able to return to
work.  The claimant was examined by his primary case physician on the
morning of March 19, 2002.  That doctor concurred with the opinion of
the claimant's psychologist that the claimant was not medically able to
return to work at that time.

At 1PM on March 19, 2002, the claimant again returned to the workplace,
and was prepared to request an extension of his medical leave of
absence.  However, before he could do so he was informed by someone
from human resources that his employment was being terminated.

In companion Case No. 814049, the Department originally disqualified
the claimant from March 19 through May 1, 2002, based on a first
treatment date of May 9, 2002.  The Department reversed its
disqualification, and the claimant withdrew his appeal, based on
documents showing that the claimant was first treated for his medical
condition on December 13, 2001, and that he was first certified to be
disabled on February 20, 2002.

## REASONS FOR DECISION

A voluntary plan is a plan approved by the Department which provides
for the payment of disability benefits to the employees of an
employer, or several cooperating employers, using insurance or self-
insurance. (California Unemployment Insurance Code, sections 3251-
3259.)

000000-798678                    2

The rights afforded to the covered employees by a voluntary plan must be greater than those provided under the Disability Fund. (Unemployment Insurance Code, section 3254(a).)

Benefits payable to an employee who is covered by a voluntary plan at the commencement of a disability benefit period are the liability of that voluntary plan, not the Disability Fund, even if a subsequent disabling condition occurs during that period.    (Unemployment Insurance Code, section 3253.)

A claimant is not entitled to benefits from the Disability Fund for a disability benefit period that commences while the claimant is covered by a voluntary plan. (Unemployment Insurance Code, section 3253; Precedent Decision P-D-455.)

An employee covered by a voluntary plan is eligible for benefits under the plan with respect to any disability benefit period if the employee is disabled at the time coverage attaches, or thereafter during coverage becomes disabled, even if benefits are not immediately payable under the plan. (California Code of Regulations, Title 22, section 3254-2(d).)

In Precedent Decision P-D-416, the claimant resigned her voluntary plan employment because of personal preference because she was seven months pregnant, thereby terminating her voluntary plan coverage. Three days later, she became disabled due to pregnancy.    The Appeals Board held that the Disability Fund, not the voluntary plan, was liable for claimant's benefits, because her disability commenced after her voluntary plan coverage terminated.

In *Sears, Roebuck & Co. v. Stewart* (1958) 162 Cal.App.2d 793, the court held that nothing in the code precludes a voluntary plan from terminating coverage upon resignation or discharge. In that case, the plan contained such a provision, and the court held that the Disability Fund was liable for benefits paid to the claimants who became disabled on the day following their discharge or resignation.

In this case, the claimant became disabled on February 20, 2002.    The claimant's employment did not end until March 19, 2002.    It is therefore concluded that the claimant was an employee who was covered by a voluntary plan at the commencement of the disability benefits. Therefore, the voluntary plan is found liable for payment of disability benefits.

000000-798678                    3

DECISION

The voluntary plan denial of coverage is reversed.  The voluntary
plan is liable for payment of disability benefits to the claimant.

OAK:mp/





CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD

**OAKLAND OFFICE OF APPEALS**
**1515 Clay St Ste 902**
**OAKLAND CA 94612**

(510) 622-3900

| | |
|---|---|
| EDWARD NORWOOD<br>SSN: 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<br>Claimant-Appellant | Case No. **747291**<br><br>Date Appeal Filed: 06/17/2002<br><br>EDD: 1450 BYB: 03/17/2002 |

**Date and Place of Hearing(s):**
(1) 08/28/2002 Oakland

**Parties Appearing:**
Claimant

# EXHIBIT $E$

# DECISION

The decision in the above-captioned case appears on the following page(s).

The decision is final unless appealed within 20 calendar days from the date of mailing shown below. See the attached "Notice to Parties" for further information on how to file an appeal. If you are entitled to benefits and have a question regarding the payment of benefits, call EDD at 1-800-300-5616.

Susan L. Bloom

**Susan L. Bloom,** Administrative Law Judge

Date Mailed:

SEP 1 3 2002

**Case No.: 747291**                    **Oakland Office of Appeals**
CLT/PET:  Edward Norwood                ALJ:  S.L. Bloom
Parties Appearing:  Claimant
Parties Appearing by Written Statement:  None

---

### STATEMENT OF FACTS

The claimant filed an approximately five-week late appeal from a
Department determination which held him disqualified for benefits,
based on a finding he had been discharged for misconduct connected
with his most recent work.

The claimant's appeal was late because he was confused with the
differentiation between filing an unemployment insurance appeal and a
disability insurance appeal, that is, he did not understand that he
could pursue an unemployment insurance appeal while his application
for disability insurance was pending.  As soon as he understood that
he could do so he pursued his unemployment insurance appeal.

The claimant was most recently employed at the Stanford Linear
Accelerator as a traffic manager for more than twenty years at a
final salary rate of $4,271 per month.  His last day of work was
March 19, 2002.  His work ended under the following circumstances.

The claimant was discharged fro an alleged final incident of
insubordination on March 11, 2002.  According to the claimant, he was
told by his immediate supervisor to answer her email with a personal
response.  The claimant had just returned from a medical leave of
absence for anxiety.

Although the supervisor indicates in the letter of termination that
the claimant was disruptive and loud in refusing the supervisor's
orders, the claimant credibly denied this.  In this regard, it is
found that he had the best opportunity to perceive and recollect the
events in question. Additionally, he had a collected demeanor during
the hearing.  The supervisor did not give the claimant an opportunity
to comply with the order. He became ill, went to the medical
department and was sent home for elevated blood pressure.

### REASONS FOR DECISION

Section 1328 of the Unemployment Insurance Code provides that an appeal
from a determination must be filed within 20 days of mailing or
personal service of the notice and that the time may be extended for
good cause, which includes, but is not limited to, mistake,
inadvertence, surprise, or excusable neglect.

020913-747291-2                    2

Good cause is found for the late filing of the appeal.  The claimant
was confused by the requirements for two programs administered by the
Department at the same time.  As soon as he learned he could pursue
his unemployment insurance appeal while his disability claim was
pending he promptly did so.

An individual is disqualified for benefits if he or she has been
discharged for misconduct connected with his or her most recent work.
(Unemployment Insurance Code, section 1256.)

"Misconduct connected with the work" is a substantial breach by the
claimant of an important duty or obligation owed the employer,
willful or wanton in character, and tending to injure the employer.
(Precedent Decision P-B-3, citing Maywood Glass Co. v. Stewart (1959)
170 Cal.App.2d 719.)

The employer has the burden of proving misconduct. (Prescod v.
California Unemployment Insurance Appeals Board (1976) 57 Cal.App.3d
29.)

There must be a direct and proximate causal relationship between
specific acts of misconduct and a discharge if a disqualification is
to be assessed under section 1256 of the code. (Precedent Decision P-
B-192.)

An employee shall substantially comply with all the directions of his
or her employer concerning the service on which he or she is engaged,
except where such obedience is impossible or unlawful, or would
impose new and unreasonable burdens upon the employee. (Labor Code,
section 2856.)

In Amador v. California Unemployment Insurance Appeals Board (1984)
35 Cal.3d 671, the California Supreme Court held that an employee's
refusal to comply with a reasonable rule or direction is not
misconduct if the employee has good cause for his or her action. The
claimant has the burden of proving good cause exists for the refusal
to comply.

The burden of proving there was a discharge for misconduct has not
been met.  The claimant presented credible testimony to the effect
that he was not given an opportunity to comply with the supervisor's
order that he respond to her email personally. In addition, the
claimant raised serious concerns as to whether this order was
reasonable.

Additionally, it is found that the claimant did not yell and scream at his supervisor. Accordingly, the incident allegedly precipitating the discharge is found not to rise to the level of misconduct and therefore the determination of the Department is reversed.

## DECISION

Good cause is found for the late filing of the appeal. The Department determination is reversed. The claimant is not disqualified for benefits under Code section 1256. Benefits are payable provided the claimant is otherwise eligible.

SD:wm

020913-747291-2                4

**EXHIBIT** ___F___

1 | **WORKERS' COMPENSATION APPEALS BOARD**

2 | **STATE OF CALIFORNIA**

3

| | |
|---|---|
| 4  **EDWARD NORWOOD,** | Case No.   SFO 0465339 |
| 5  | |
| 6  *Applicant,* | **OPINION AND ORDER** |
| 7  **vs.** | **GRANTING RECONSIDERATION AND DECISION AFTER** |
| 8  **STANFORD UNIVERSITY; ZURICH NORTH AMERICAN INSURANCE CO.,** | **RECONSIDERATION** |
| 9  *Defendants.* | |
| 10 | |

11       Edward Norwood, applicant in propria persona, seeks reconsideration of the Findings and

12 Orders of July 30, 2007, in which the workers' compensation administrative law judge (WCJ)

13 found, in relevant part, that applicant, while employed during a period through approximately

14 March 19, 2002, did not sustain injury arising out of and occurring in the course of employment in

15 the form of high blood pressure, and did not sustain injury arising out of and occurring in the

16 course of his employment to his psyche within the meaning of Labor Code section 3208.3(b)(1).  In

17 addition, the WCJ ruled that applicant's proposed exhibits 17 and 18 are inadmissible, that

18 defendant's Exhibit FF is admissible.

19       Applicant contends, in substance, that the WCJ erred in not admitting into evidence a

20 recorded conversation between applicant and Dr. Allen, and that the WCJ erred in not following

21 the medical opinion of Dr. Waldman, applicant's qualified medical evaluator (QME).  In addition,

22 applicant contends that the WCJ erred in admitting the report of Dr. Anderson, a psychiatrist, and

23 that a finding of industrial high blood pressure is justified by the medical opinion of the defense

24 QME, Dr. Blau.

25       Defendant filed an answer, alleging in relevant part that defendant was not served with

26 applicant's petition for reconsideration.  We deny the allegation and decline to dismiss the petition

27 on grounds of non-service.    The proof of service submitted with applicant's petition for

1  reconsideration included defense counsel, at his San Francisco address, on the service list.

2  Moreover, defendant has had an opportunity to file an answer, which we have considered.

3      We have considered the contentions of applicant's petition for reconsideration and the

4  Report and Recommendation of the WCJ with respect thereto. Based on our review of the

5  record, and for the reasons stated in said Report, which we adopt and incorporate, we will grant

6  reconsideration, amend the WCJ's decision to reflect that applicant sustained an industrial

7  aggravation of his high blood pressure, and otherwise affirm the WCJ's decision. In addition, we

8  will return this matter to the trial level for a determination of any benefits to which applicant may

9  be entitled as a result of the industrial aggravation, as recommended in the WCJ's Report.

10      For the foregoing reasons,

11      **IT IS ORDERED,** that reconsideration of the Findings and Orders of July 30, 2007 is

12  **GRANTED,** and that as the Appeals Board's Decision After Reconsideration, said decision is

13  **AFFIRMED, EXCEPT** that the second paragraph of the "Orders" (i.e., the take-nothing Order) is

14  **RESCINDED** and **DELETED,** and Findings 1 and 4 are **AMENDED** to read as follows:

15                          **FINDINGS OF FACT**

16      "1. Applicant, Edward Norwood, born January 30, 1953, while employed during a period

17  through approximately March 19, 2002, as a traffic manager, at Palo Alto, California, by Stanford

18  University, sustained injury arising out of and occurring in the course of his employment in the

19  form of an aggravation of his high blood pressure, and did not sustain injury arising out of and

20  occurring in the course of his employment to his psyche within the meaning of Labor Code section

21  3208.3(b)(1)."

22      "4. The issue of whether applicant is entitled to any workers' compensation benefits as a

23  result of the industrial aggravation of his high blood pressure is deferred, pending further

24  proceedings and determination by the WCJ, jurisdiction reserved."

25  ///

26  ///

27  ///

NORWOOD, Edward                    2

1    **IT IS FURTHER ORDERED**, as the Appeals Board's decision after reconsideration, that

2    this matter is **RETURNED** to the trial level for further proceedings and new determination by the

3    WCJ as to any benefits to which applicant may be entitled, consistent with this opinion.

4

5                                          WORKERS' COMPENSATION APPEALS BOARD

6

7

8                                          _____

9    I CONCUR.                             **WILLIAM K. O'BRIEN**

10

11

12                                         **JAMES C. CUNEO**

13   **CONCURRING, BUT NOT SIGNING**

14   **JOSEPH M. MILLER**

15

16   DATED AND FILED AT SAN FRANCISCO, CALIFORNIA

17   **OCT 1 0 2007**

18   SERVICE MADE BY MAIL ON ABOVE DATE ON THE PERSONS LISTED BELOW AT

19   THEIR ADDRESSES AS SHOWN ON THE CURRENT OFFICIAL ADDRESS RECORD

20   *Edward Norwood*
     *Adelson Testan & Brundo*

21

22

23

24

25   jtl/kcs

26

27

NORWOOD, Edward                    3

\*\*\*   REC 2008094   133♀   H93914E0 F21J   CIPQYA7   ♀A7   (F-DRG )   \*\*\*

SOCIAL SECURITY ADMINISTRATION

**EXHIBIT** $G$

Date: April 3, 2008
Claim Number: 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A

EDWARD NORWOOD
35156 LIDO BLVD APT J
NEWARK CA 94560-1184

You asked us for information from your record. The information that you
requested is shown below. If you want anyone else to have this information, you
may send them this letter.

Information About Current Social Security Benefits

  Beginning December 2007, the full monthly
  Social Security benefit before any deductions is......$ 1867.70

    We deduct $96.40 for medical insurance premiums each month.

  The regular monthly Social Security payment is........$ 1771.00
  (We must round down to the whole dollar.)

  Social Security benefits for a given month are paid the following month. (For
  example, Social Security benefits for March are paid in April.)

  Your Social Security benefits are paid on or about the fourth Wednesday of
  each month.

# Social Security Administration
# **Retirement, Survivors and Disability Insurance**
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date:  March 29, 2004
Claim Number:  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HA

0325 MCS,PC7J,BA,TI38,858,153
EDWARD NORWOOD
35156 LIDO BLVD APT J
NEWARK, CA 94560-1184

000019709 02 MB    0.534

ll.lu.l.l.l.l.ll.ll.....ll..lll.l.l.l.ll.l..l.l.lll

You are entitled to monthly disability benefits beginning September 2002.

**The Date You Became Disabled**

We found that you became disabled under our rules on March 19, 2002.

Our records show that you became disabled on March 19, 2002.  By law, we can
pay benefits no earlier than 12 months before the month of filing.  Since you filed
for benefits on September 4, 2003, monthly payments will begin September 2002.

**What We Will Pay And When**

- You will receive $30,831.00 around April 4, 2004.

- This is the money you are due for September 2002 through March 2004.

- Your next payment of $1,653.00, which is for April 2004, will be received
  on or about the fourth Wednesday of May 2004.

- After that you will receive $1,653.00 on or about the fourth Wednesday of
  each month.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153
Pub 05-10058

C

See Next Page

**Your Benefits**

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| September | 2002 | $1,597.00 | Entitlement began |
| December | 2002 | $1,619.30 | Cost-of-living adjustment |
| December | 2003 | $1,653.30 | Cost-of-living adjustment |

**Other Social Security Benefits**

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

**Your Responsibilities**

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security Disability Benefits...What You Need To Know." It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

A provider of employment or vocational rehabilitation services may contact you about getting help to go to work. The provider may be a State vocational rehabilitation agency or a provider under contract with the Social Security Administration.

If you go to work, special rules allow us to continue your cash payments and health care coverage. For more information about how work and earnings affect disability benefits, call or visit any Social Security office and ask for the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication No. 05-10052).

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HA                                             Page 3 of 4

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review
your case and consider any new facts you have. A person who did not make the
first decision will decide your case. We will correct any mistakes. We will review
those parts of the decision which you believe are wrong and will look at any new
facts you have. We may also review those parts which you believe are correct
and may make them unfavorable or less favorable to you.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got
  this letter 5 days after the date on it unless you show us that you did not
  get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an
  appeal.

- You have to ask for an appeal in writing. We will ask you to sign a Form
  SSA-561-U2, called "Request for Reconsideration". Contact one of our
  offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made
on Your Social Security Claim". It contains more information about the appeal.

## Things To Remember For The Future

Doctors and other trained staff decided that you are disabled under our rules.
But, this decision must be reviewed at least once every 3 years. We will send
you a letter before we start the review. Based on that review, your benefits will
continue if you are still disabled, but will end if you are no longer disabled.

## If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. There are groups that
can help you find a lawyer or give you free legal services if you qualify. There
are also lawyers who do not charge unless you win your appeal. Your local Social
Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we
must approve the fee before he or she can collect it. And if you hire a lawyer, we
will withhold up to 25 percent of any past due benefits to pay toward the fee.

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HA                                          Page  4 of  4

**If You Have Any Questions**

We invite you to visit our website at www.socialsecurity.gov on the Internet to
find general information about Social Security.  If you have any specific
questions, you may call us toll-free at 1-800-772-1213, or call your local Social
Security office at 1-510-797-7213.  We can answer most questions over the
phone.  If you are deaf or hard of hearing, you may call our TTY number,
1-800-325-0778.  You can also write or visit any Social Security office.  The office
that serves your area is located at:

> SOCIAL SECURITY
> SUITE 100
> 3100 MOWRY AVE
> FREMONT, CA 94538

If you do call or visit an office, please have this letter with you.  It will help us
answer your questions.  Also, if you plan to visit an office, you may call ahead to
make an appointment.  This will help us serve you more quickly when you arrive
at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

JULES M. TANENBAUM, M.D.
PSYCHIATRY SS# 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
1111 CIVIC DRIVE
SUITE 270
WALNUT CREEK, CALIFORNIA 94596
(925) 287-8262 • (510) 537-5533
FAX (925) 287-8088

9/5/06

**EXHIBIT** _H_

NORWOOD, EDWARD
D.O.I - 3/20/02
WCAB# SFO 046 5339
SEDGWICK CLAIM#: STA 0201695

Dx 296.23

i  psychiatric evaluation (90801)   5/9/02                              $195.

52  office medication visits (90862)  6/7/02    4/1/04   52 visits @ $80.  4160.
      @ $80.                          6/24/02   4/30/04
                                      7/16/02   5/28/04
                                      8/14/02   6/25/04
                                      9/11/02   7/23/04
TOTAL DUE $4355.                     10/9/02   9/10/04
                                     11/6/02   11/16/04
                                     12/4/02   12/16/04
Thank you                            1/8/03    1/13/05
                                     2/4/03    3/10/05
                                     3/5/03    4/7/05
                                     4/2/03    5/10/05
                                     4/22/03   6/6/05
                                     5/9/03    7/7/05
                                     5/28/03   8/2/05
                                     7/1/03    8/31/05
                                     7/31/03   9/28/05
                                     8/28/03   11/11/05
                                     9/23/03   12/9/05
                                     10/16/03  1/10/06
                                     11/13/03  3/17/06
                                     12/9/03   4/14/06
                                     1/3/04    5/11/06
                                     2/6/04    6/8/06
                                     3/4/04    7/5/06
                                               8/2/06
                                               8/31/06

**JULES M. TANENBAUM, M.D.**
PSYCHIATRY SS# 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
47 QUAIL COURT
SUITE 100
WALNUT CREEK, CALIFORNIA 94596
PHONE: (510) 537-5533
6/23/03

NORWOOD, EDWARD
D.O.I. 3/20/02
WCAB# SFO0465339
SEDGWICK CLAIM# : STA020169S

Dx: 296.23
        pschiatric evaluation (90801)         5/9/02    $175.
        office medication visits (90862)       6/7/02     80
                         @ $80                 6/26/02    80
                                               7/16/02    80
                                               8/14/02    80
                                               9/11/02    80
                                               10/9/02    80
                                               11/6/02    80
                                               12/4/02    80
                                               1/8/03     80
                                               2/4/03     80
                                               3/5/03     80
                                               4/2/03     80
                                               4/22/03    80
                                               5/9/03     80
                                               5/28/03    80
                                                        $1375.

Thank you



**ZURICH**

April 26, 2007

**EXHIBIT** _____

Options for Life Counseling Ctr Inc
39962 Cedar Blvd #274
Newark, Ca 94560

RE:    Claim #:          2010108840-001
       Insured:          Stanford University(SLAC)
       Date of Loss:     02/11/02
       Employee:         Edward Norwood
       WCAB #:           (number)

**Zurich North America**

Dear Sir or Madam:

**Claims**

P.O. Box 7774
San Francisco, CA
94120-7774

Telephone (800) 701-4926
Fax (415) 538-7150
http://www.zurichna.com

We are in receipt of your  lien received in our office on 04-23-07 in the amount
of $3813.50 in regard to this case.  Your  lien is objected to based upon the
following grounds:

This is a denied case and no service were authorized.

The bill is for services provided by an LCSW, not an MD or Phd psychologist,
nor under a prescription from a treating physician; such services are not
reimbursable as medical care.

All issues will be raised at the time of the hearing.  Please be advised this letter
shall serve as a continuing objection to any further treatment and/or services
rendered to the claimant.  In addition, this objection applies to any future
amended invoice filed in this matter.

If you wish to negotiate your lien, do not call our office.  All settlement proposals
must be submitted in writing for consideration.  Please include our claim number
on all forms of communication.

Thank you for your courtesy and cooperation.

Very truly yours,
Zurich American Insurance Company

Martha Deacon
Claim Case Manager
415-538-7402

April 26, 2007
Page 2

cc:        See Proof of SErvices

RE:     Edward Norwood
Claim No.:     2010108840-001

## PROOF OF SERVICE

I Roselyn Soriano  hereby declare that:

I am employed in the County of San Francisco, California. I am over the age of eighteen and am not
a party to the within cause. My business address is PO Box 7774, San Francisco, California 94188.

On 04-26-07, I served the documents listed below on the parties listed below, by placing a true copy
thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at
San Francisco, California addressed as follows:

**DOCUMENT(S) SERVED:**     Objection Letter.

**PARTIES SERVED:**     **Edward Norwood**
                            **35156 Lido blvd**
                            **Newark, Ca 94560**

                            **WCAB**
                            **1515 Clay Street, 6th floor**
                            **Oakland, Ca 94612**

                            **Options for Life Counseling Ctr Inc**
                            **39962 Cedar Blvd # 274**
                            **Newark, Ca 94560**

                            **Stanford University**
                            **SLAC**
                            **2575 Sandhill Road**
                            **Menlo Park, Ca 94025**
                            **Attn: Carmella Huser**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 04-26-07 at San Francisco, California.

R Soriano

*Options for Life Counseling Center, Inc*
*Mailing Address*
*39962 Cedar Blvd #274*
*Newark, Ca 94560*
*510-943-5046  510-659-1429 (fax)*
*E-mail: optionsforlifeinc@yahoo.com*
*Gloria J. Baxter, LCSW CEO*
*Lic. #14217*

**O**
**P**
**T**    **April 13, 2007**
**I**
**O**
**N**                    **CERTIFICATE OF SERVICE**
**S**              **WORKERS' COMPENSATION APPEALS BOARD**
          **EDWARD NORWOOD V STANFORD UNIVERSITY/SLAC**
**F**                      **CASE NO SFO 0465339**
**O**
**R**    I, Gloria J. Baxter, LCSW declare that I am a citizen of the United States, over the age of 18 years
       and not a party to the within entitled action.  I am employed at the offices of Options for Life
       Counseling Center, Inc. 39962 Cedar Blvd. #274, Newark, CA 94560.
**L**
**I**    On April 13, 2007 I served the attached:
**F**
**E**    NOTICE AND REQUEST FOR AN AMENDMENT OF LIEN FOR GLORIA J. BAXTER

**C**    On the interested parties in said action, by placing a true copy thereof as indicated below:
**O**
**U**    Clerk Workman's Compensation Appeals Board
**N**    1414 Clay Street
**S**    Oakland, CA. 94612
       ATT: Judge Stanley Shields
**E**
**L**    Edward Norwood
**I**    35156 Lido Blvd
**N**    Newark, CA 94560
**G**
       Stanford University/SLAC
**C**    2575 Sandhill Road
**T**    Menlo Park, CA 94025
**R**    Att: Carmella Huser
**,**
       Zurich American Insurance Co
**I**    P.O. 7774
**N**    San Francisco, CA 94188
**C**    Att: Martha Deacon
**,**
       [xx] VIA UNITED STATES MAIL: I caused such documents to be placed in an envelope addressed
       as listed above with first class postage affixed and deposited same in the United States mail, in the
       City of Newark, California and County of Alameda

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true
       and correct and that this declaration was executed on April 13, 2007 at Newark, CA.

                                                    _____
                                                    Gloria J. Baxter, LCSW

**STATE OF CALIFORNIA**
**DEPARTMENT OF INDUSTRIAL RELATIONS**
## WORKERS' COMPENSATION APPEALS BOARD

### NOTICE AND REQUEST FOR ALLOWANCE OF LIEN

(Print or type names and addresses; include ZIP Codes)

ID OR CASE NO. SFO-0465339

EDWARD NORWOOD
_Injured Worker_

35156 LIDO Blvd Newark, Ca 94560
_Address_

February 11, 2002
_Date of Claimed Injury_

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          01-30-1953
_Social Security Number_     _Date of Birth_

_Attorney for Injured Worker_

_Address_

_Employer_
SLAC Stanford Linear Accelerator
_Insurance Carrier or, if Self-Insured, Certificate Name_

Zurich American Insurance Co.
_Adjusting Agency, if Agency Administered_

_Address_

2575 Sandhill Rd Menlo Park, ca
_Address Where Claim Administered_    94012

P.O. Box 7774 San Francisco, Ca 94118
_Address_

_Attorney for Employer/Carrier_
Options for Life Counseling
_Lien Claimant_

39962 Cedar Blvd #274 Newark, Ca
_Address and Telephone No._         94560

510-943-5046
_Attorney for Lien Claimant_

_Address and Telephone No._

    The lien claimant hereby requests the Workers' Compensation Appeals Board to determine and allow as a lien the sum of _thirty eight thousand one hundred thirty_ Dollars ($ 38,135 ) against any amount now due or which may hereafter become payable as compensation to the above named worker on account of the above claimed injury.

    This request and claim for lien is for (Mark appropriate box):
    ☑ The reasonable expense incurred by or on behalf of said worker for medical treatment to cure or relieve from the effects of said injury; or
    ☐ The reasonable medical expense incurred to prove a contested claim; or
    ☐ The reasonable value of living expenses of said worker or of his or her dependents, subsequent to the injury; or
    ☐ The reasonable living expenses of the spouse or minor children, or both, of said worker, subsequent to the date of injury, where such worker has deserted or is neglecting his or her family; or
    ☐ The reasonable fee for interpreter's services performed on _____, 19_____.

_NOTE: ITEMIZED STATEMENT JUSTIFYING THE LIEN MUST BE ATTACHED_

> FOR INJURIES OCCURRING ON OR AFTER JANUARY 1, 1990, FOR WHICH THE LIEN CLAIMANT DOES NOT HAVE A WCAB IDENTIFICATION NUMBER, the lien claimant declares under penalty of perjury that:
> ☐ a copy of the original completed Employee's Claim for Workers' Compensation Benefits (DWC Form 1) is attached, or
> ☐ the lien claimant does not have a copy of the claim form, but made the following efforts to secure one:

    ☐ a copy of the lien claim and supporting documents was served by mail or delivered to each of the above-named parties.

_____        _____        4/12/07
Signature of Attorney for Lien Claimant        Signature of Lien Claimant        Date

### EMPLOYEE'S CONSENT TO ALLOWANCE OF LIEN

_I consent to the requested allowance of a lien against my compensation._

_____
Signature of Attorney for Injured Worker

DWC WCAB Form 6 (Rev 2/91)

02 10057
OSP 05 92769

**Options for Life Counseling,Inc**
**Gloria J. Baxter, LCSW**
**39962 Cedar Blvd #274**
**Newark, CA 94560**

| Date of Service | Day of Service | Provider Fee | Insurance Pd | Co-Pay | Claim Amount to be billed |
|---|---|---|---|---|---|
| 09/09/2005 | Friday | $250.00 | | | $250.00 |
| 09/16/2005 | Friday | $250.00 | | | $250.00 |
| 09/23/2005 | Friday | $250.00 | | | $250.00 |
| 09/30/2005 | Friday | $250.00 | | | $250.00 |
| 10/07/2005 | Friday | $250.00 | | | $250.00 |
| 10/14/2005 | Friday | $250.00 | | | $250.00 |
| 10/21/2005 | Friday | $250.00 | | | $250.00 |
| 10/28/2005 | Friday | $250.00 | | | $250.00 |
| 11/04/2005 | Friday | $250.00 | | | $250.00 |
| 11/11/2005 | Friday | $250.00 | | | $250.00 |
| 11/18/2005 | Friday | $250.00 | | | $250.00 |
| 11/25/2005 | Friday | $250.00 | | | $250.00 |
| 01/06/2006 | Friday | $250.00 | | | $250.00 |
| 01/20/2006 | Friday | $250.00 | | | $250.00 |
| 02/03/2006 | Friday | $250.00 | | | $250.00 |
| 02/17/2006 | Friday | $250.00 | | | $250.00 |
| 03/03/2006 | Friday | $250.00 | | | $250.00 |
| 03/17/2006 | Friday | $250.00 | | | $250.00 |
| 03/31/2006 | Friday | $250.00 | | | $250.00 |
| 04/14/2006 | Friday | $250.00 | | | $250.00 |
| 04/28/2006 | Friday | $250.00 | | | $250.00 |
| 05/12/2006 | Friday | $250.00 | | | $250.00 |
| 05/26/2006 | Friday | $250.00 | | | $250.00 |
| 06/09/2006 | Friday | $250.00 | | | $250.00 |
| | | $6,000.00 | $0.00 | $0.00 | $6,000.00 |

Options for Life Counseling Center, Inc. is requesting payment of $38,135.00 for the above rendered services.

|  | | $40,125.00 | $1,386.00 | $604.00 | $38,135.00 |

**Options for Life Counseling,Inc**
**Gloria J. Baxter, LCSW**
**39962 Cedar Blvd #274**
**Newark, CA 94560**

| Date of Service | Day of Service | Provider Fee | Insurance Pd | Co-Pay | Claim Amount to be billed |
|---|---|---|---|---|---|
| 11/29/2004 | Monday | $250.00 | | | $250.00 |
| 12/03/2004 | Friday | $250.00 | | | $250.00 |
| 12/10/2004 | Friday | $250.00 | | | $250.00 |
| 12/17/2004 | Friday | $250.00 | | | $250.00 |
| 12/20/2004 | Monday | $250.00 | | | $250.00 |
| 12/27/2004 | Monday | $250.00 | | | $250.00 |
| 01/07/2005 | Friday | $250.00 | | | $250.00 |
| 01/14/2005 | Friday | $250.00 | | | $250.00 |
| 01/21/2005 | Friday | $250.00 | | | $250.00 |
| 01/28/2005 | Friday | $250.00 | | | $250.00 |
| 02/04/2005 | Friday | $250.00 | | | $250.00 |
| 02/11/2005 | Friday | $250.00 | | | $250.00 |
| 02/18/2005 | Friday | $250.00 | | | $250.00 |
| 02/25/2005 | Friday | $250.00 | | | $250.00 |
| 03/04/2005 | Friday | $250.00 | | | $250.00 |
| 03/11/2005 | Friday | $250.00 | | | $250.00 |
| 03/18/2005 | Friday | $250.00 | | | $250.00 |
| 03/25/2005 | Friday | $250.00 | | | $250.00 |
| 04/01/2005 | Friday | $250.00 | | | $250.00 |
| 04/08/2005 | Friday | $250.00 | | | $250.00 |
| 04/15/2005 | Friday | $250.00 | | | $250.00 |
| 04/22/2005 | Friday | $250.00 | | | $250.00 |
| 04/29/2005 | Friday | $250.00 | | | $250.00 |
| 05/06/2005 | Friday | $250.00 | | | $250.00 |
| 05/13/2005 | Friday | $250.00 | | | $250.00 |
| 05/20/2005 | Friday | $250.00 | | | $250.00 |
| 05/27/2005 | Friday | $250.00 | | | $250.00 |
| 06/03/2005 | Friday | $250.00 | | | $250.00 |
| 06/10/2005 | Friday | $250.00 | | | $250.00 |
| 06/17/2005 | Friday | $250.00 | | | $250.00 |
| 06/24/2005 | Friday | $250.00 | | | $250.00 |
| 07/01/2005 | Friday | $250.00 | | | $250.00 |
| 07/08/2005 | Friday | $250.00 | | | $250.00 |
| 07/15/2005 | Friday | $250.00 | | | $250.00 |
| 07/22/2005 | Friday | $250.00 | | | $250.00 |
| 07/29/2005 | Friday | $250.00 | | | $250.00 |
| 08/05/2005 | Friday | $250.00 | | | $250.00 |
| 08/12/2005 | Friday | $250.00 | | | $250.00 |
| 08/19/2005 | Friday | $250.00 | | | $250.00 |
| 08/26/2005 | Friday | $250.00 | | | $250.00 |
| 09/02/2005 | Friday | $250.00 | | | $250.00 |
| | | $10,250.00 | $0.00 | $0.00 | $10,250.00 |

**Options for Life Counseling, Inc**
**Gloria J. Baxter, LCSW**
**39962 Cedar Blvd #274**
**Newark, CA 94560**

| Date of Service | Day of Service | Provider Fee | Insurance Pd | Co-Pay | Claim Amount to be billed |
|---|---|---|---|---|---|
| 02/13/2004 | Friday | $250.00 | | | $250.00 |
| 02/20/2004 | Friday | $250.00 | | | $250.00 |
| 02/27/2004 | Friday | $250.00 | | | $250.00 |
| 03/05/2004 | Friday | $250.00 | | | $250.00 |
| 03/12/2004 | Friday | $250.00 | | | $250.00 |
| 03/19/2004 | Friday | $250.00 | | | $250.00 |
| 03/26/2004 | Friday | $250.00 | | | $250.00 |
| 04/02/2004 | Friday | $250.00 | | | $250.00 |
| 04/09/2004 | Friday | $250.00 | | | $250.00 |
| 04/16/2004 | Friday | $250.00 | | | $250.00 |
| 04/23/2004 | Friday | $250.00 | | | $250.00 |
| 04/30/2004 | Friday | $250.00 | | | $250.00 |
| 05/07/2004 | Friday | $250.00 | | | $250.00 |
| 05/14/2004 | Friday | $250.00 | | | $250.00 |
| 05/21/2004 | Friday | $250.00 | | | $250.00 |
| 05/28/2004 | Friday | $250.00 | | | $250.00 |
| 06/04/2004 | Friday | $250.00 | | | $250.00 |
| 08/11/2004 | Friday | $250.00 | | | $250.00 |
| 08/18/2004 | Friday | $250.00 | | | $250.00 |
| 06/25/2004 | Friday | $250.00 | | | $250.00 |
| 07/02/2004 | Friday | $250.00 | | | $250.00 |
| 07/09/2004 | Friday | $250.00 | | | $250.00 |
| 07/16/2004 | Friday | $250.00 | | | $250.00 |
| 07/23/2004 | Friday | $250.00 | | | $250.00 |
| 07/30/2004 | Friday | $250.00 | | | $250.00 |
| 08/06/2004 | Friday | $250.00 | | | $250.00 |
| 08/13/2004 | Friday | $250.00 | | | $250.00 |
| 08/20/2004 | Friday | $250.00 | | | $250.00 |
| 08/27/2004 | Friday | $250.00 | | | $250.00 |
| 09/03/2004 | Friday | $250.00 | | | $250.00 |
| 09/10/2004 | Friday | $250.00 | | | $250.00 |
| 09/17/2004 | Friday | $250.00 | | | $250.00 |
| 09/24/2004 | Friday | $250.00 | | | $250.00 |
| 10/01/2004 | Friday | $250.00 | | | $250.00 |
| 10/08/2004 | Friday | $250.00 | | | $250.00 |
| 10/15/2004 | Friday | $250.00 | | | $250.00 |
| 10/22/2004 | Friday | $250.00 | | | $250.00 |
| 10/29/2004 | Friday | $250.00 | | | $250.00 |
| 11/05/2004 | Friday | $250.00 | | | $250.00 |
| 11/12/2004 | Friday | $250.00 | | | $250.00 |
| 11/19/2004 | Friday | $250.00 | | | $250.00 |
| | | $10,250.00 | $0.00 | $0.00 | $10,250.00 |

**Options for Life Counseling, Inc**
**Gloria J. Baxter, LCSW**
**39962 Cedar Blvd #274**
**Newark, CA 94560**

| Date of Service | Day of Service | Provider Fee | Insurance Pd | Co-Pay | Claim Amount to be billed |
|---|---|---|---|---|---|
| 04/11/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 04/22/2003 | Tuesday | $125.00 | | | $125.00 |
| 04/25/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 05/06/2003 | Tuesday | $125.00 | $40.00 | | $85.00 |
| 05/09/2003 | Friday | $125.00 | $40.00 | | $85.00 |
| 05/20/2003 | Tuesday | $125.00 | $40.00 | | $85.00 |
| 05/23/2003 | Friday | $125.00 | $40.00 | | $85.00 |
| 06/03/2003 | Tuesday | $125.00 | | | $125.00 |
| 06/06/2003 | Friday | $125.00 | | | $125.00 |
| 06/17/2003 | Tuesday | $125.00 | | | $125.00 |
| 06/20/2003 | Friday | $125.00 | | | $125.00 |
| 07/01/2003 | Tuesday | $125.00 | | | $125.00 |
| 07/03/2003 | Friday | $125.00 | | | $125.00 |
| 07/15/2003 | Tuesday | $125.00 | | | $125.00 |
| 07/18/2003 | Friday | $125.00 | | | $125.00 |
| 07/29/2003 | Tuesday | $125.00 | | | $125.00 |
| 08/01/2003 | Friday | $125.00 | | | $125.00 |
| 08/08/2003 | Friday | $125.00 | | | $125.00 |
| 08/15/2003 | Friday | $125.00 | | | $125.00 |
| 08/22/2003 | Friday | $125.00 | | | $125.00 |
| 08/29/2003 | Friday | $125.00 | | | $125.00 |
| 09/05/2003 | Friday | $125.00 | | | $125.00 |
| 09/12/2003 | Friday | $125.00 | | | $125.00 |
| 09/19/2003 | Friday | $125.00 | | | $125.00 |
| 09/26/2003 | Friday | $125.00 | | | $125.00 |
| 10/03/2003 | Friday | $125.00 | | | $125.00 |
| 10/10/2003 | Friday | $125.00 | | | $125.00 |
| 10/17/2003 | Friday | $125.00 | | | $125.00 |
| 10/24/2003 | Friday | $125.00 | | | $125.00 |
| 10/31/2003 | Friday | $125.00 | | | $125.00 |
| 11/07/2003 | Friday | $125.00 | | | $125.00 |
| 11/14/2003 | Friday | $125.00 | | | $125.00 |
| 11/21/2003 | Friday | $125.00 | | | $125.00 |
| 12/05/2003 | Friday | $125.00 | | | $125.00 |
| 12/12/2003 | Friday | $125.00 | | | $125.00 |
| 12/19/2003 | Friday | $125.00 | | | $125.00 |
| 01/09/2004 | Friday | $250.00 | | | $250.00 |
| 01/16/2004 | Friday | $250.00 | | | $250.00 |
| 01/23/2004 | Friday | $250.00 | | | $250.00 |
| 01/30/2004 | Friday | $250.00 | | | $250.00 |
| 02/06/2004 | Friday | $250.00 | | | $250.00 |
| | | $5,750.00 | $240.00 | $40.00 | $5,470.00 |

| | | | | | |
|---|---|---|---|---|---|
| 05/28/2002 | Tuesday | $100.00 | | | |

OPTIONS FOR LIFE
COUNSELING CENTER
2450 PERALTA BLVD. # 209

GLORIA J BAXTER

| Date of Service | Day of Service | Provider Fee | Insurance Pd | Co-Pay | Claim Amount to be billed |
|---|---|---|---|---|---|
| 08/01/2002 | Thursday | $100.00 | $45.00 | $15.00 | $40.00 |
| 08/06/2002 | Tuesday | $100.00 | | | $100.00 |
| 08/16/2002 | Friday | $100.00 | $45.00 | $15.00 | $40.00 |
| 08/20/2002 | Tuesday | $100.00 | | | $100.00 |
| 08/30/2002 | Friday | $100.00 | $36.00 | $24.00 | $40.00 |
| 09/06/2002 | Friday | $100.00 | | | $100.00 |
| 09/10/2002 | Tuesday | $100.00 | | | $100.00 |
| 09/13/2002 | Friday | $100.00 | $36.00 | $24.00 | $40.00 |
| 09/24/2002 | Tuesday | $100.00 | | | $100.00 |
| 09/27/2002 | Friday | $100.00 | $36.00 | $24.00 | $40.00 |
| 10/01/2002 | Tuesday | $100.00 | | | $100.00 |
| 10/11/2002 | Friday | $100.00 | $36.00 | $24.00 | $40.00 |
| 10/22/2002 | Tuesday | $100.00 | | | $100.00 |
| 10/25/2002 | Thursday | $100.00 | $36.00 | $24.00 | $40.00 |
| 10/31/2002 | Thursday | $100.00 | | | $100.00 |
| 11/05/2002 | Tuesday | $100.00 | | | $100.00 |
| 11/08/2002 | Friday | $100.00 | $36.00 | $24.00 | $40.00 |
| 11/19/2002 | Tuesday | $100.00 | | | $100.00 |
| 11/21/2002 | Thursday | $100.00 | | | $100.00 |
| 11/26/2002 | Tuesday | $100.00 | | | $100.00 |
| 12/05/2002 | Thursday | $100.00 | | | $100.00 |
| 12/10/2002 | Tuesday | $100.00 | | | $100.00 |
| 12/20/2002 | Friday | $100.00 | $45.00 | $15.00 | $40.00 |
| 12/24/2002 | Tuesday | $100.00 | | | $100.00 |
| 01/03/2003 | Friday | $100.00 | | | $100.00 |
| 01/07/2003 | Tuesday | $100.00 | | | $100.00 |
| 01/10/2003 | Friday | $100.00 | $40.00 | $20.00 | $40.00 |
| 01/14/2003 | Tuesday | $100.00 | | $20.00 | $80.00 |
| 01/17/2003 | Friday | $100.00 | $40.00 | $20.00 | $40.00 |
| 01/28/2003 | Tuesday | $125.00 | $40.00 | $20.00 | $65.00 |
| 01/31/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 02/11/2003 | Tuesday | $125.00 | $40.00 | $20.00 | $65.00 |
| 02/14/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 02/25/2003 | Tuesday | $125.00 | $40.00 | $20.00 | $65.00 |
| 02/28/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 03/11/2003 | Tuesday | $125.00 | | $20.00 | $105.00 |
| 03/14/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 03/25/2003 | Tuesday | $125.00 | $40.00 | | $85.00 |
| 03/28/2003 | Friday | $125.00 | $40.00 | $20.00 | $65.00 |
| 04/08/2003 | Tuesday | $125.00 | $40.00 | | $85.00 |
| | | $4,275.00 | $831.00 | $429.00 | $3,015.00 |

OPTIONS FOR LIFE
COUNSELING CENTER
2450 PERALTA BLVD. # 209
FREMONT, CA 94538
GLORIA J. BAXTER

To whom it may concern:

The following dates are in regards to Edward Norwoods' pyschotherapy visit's.

| Date of Service | Day of Service | Provider Fee | Insurance Pd | Co-Pay | Claim Amount to be billed |
|---|---|---|---|---|---|
| 12/13/2001 | Thursday | $100.00 | | | $100.00 |
| 12/20/2001 | Thursday | $100.00 | | | $100.00 |
| 12/24/2001 | Monday | $100.00 | | | $100.00 |
| 12/31/2001 | Monday | $100.00 | | | $100.00 |
| 01/03/2002 | Thursday | $100.00 | | | $100.00 |
| 01/08/2002 | Tuesday | $100.00 | | | $100.00 |
| 01/17/2002 | Thursday | $100.00 | | | $100.00 |
| 01/22/2002 | Tuesday | $100.00 | | | $100.00 |
| 01/31/2002 | Thursday | $100.00 | | | $100.00 |
| 02/05/2002 | Tuesday | $100.00 | | | $100.00 |
| 02/14/2002 | Thursday | $100.00 | | | $100.00 |
| 02/19/2002 | Tuesday | $100.00 | | $15.00 | $85.00 |
| 02/28/2002 | Thursday | $100.00 | | | $100.00 |
| 03/06/2002 | Wednesday | $100.00 | | $15.00 | $85.00 |
| 03/11/2002 | Monday | $100.00 | | | $100.00 |
| 03/14/2002 | Thursday | $100.00 | | | $100.00 |
| 03/20/2002 | Wednesday | $100.00 | | | $100.00 |
| 03/28/2002 | Thursday | $100.00 | $45.00 | $15.00 | $40.00 |
| 04/02/2002 | Tuesday | $100.00 | | | $100.00 |
| 04/11/2002 | Thursday | $100.00 | $45.00 | $15.00 | $40.00 |
| 04/16/2002 | Tuesday | $100.00 | | | $100.00 |
| 04/25/2002 | Thursday | $100.00 | $45.00 | $15.00 | $40.00 |
| 04/30/2002 | Tuesday | $100.00 | | | $100.00 |
| 05/09/2002 | Thursday | $100.00 | $45.00 | $15.00 | $40.00 |
| 05/14/2002 | Tuesday | $100.00 | | | $100.00 |
| 05/23/2002 | Thursday | $100.00 | | | $100.00 |
| 05/28/2002 | Tuesday | $100.00 | | | $100.00 |
| 06/06/2002 | Thursday | $100.00 | | | $100.00 |
| 06/12/2002 | Wednesday | $100.00 | $45.00 | $15.00 | $40.00 |
| 06/20/2002 | Thursday | $100.00 | | | $100.00 |
| 06/25/2002 | Tuesday | $100.00 | | | $100.00 |
| 07/03/2002 | Wednesday | $100.00 | | | $100.00 |
| 07/09/2002 | Tuesday | $100.00 | | | $100.00 |
| 07/19/2002 | Friday | $100.00 | $45.00 | $15.00 | $40.00 |
| 07/23/2002 | Tuesday | $100.00 | | | $100.00 |
| 08/01/2002 | Thursday | $100.00 | $45.00 | $15.00 | $40.00 |
| | | $3,600.00 | $315.00 | $135.00 | $3,150.00 |

Options for Life Counseling,Inc
Gloria J. Baxter, LCSW
39962 Cedar Blvd #274
Newark, CA 94560

7006 2760 0005 0338 1295

CERTIFIED MAIL

ZURICH AMERICAN INC
1101 PERIMETER DRIVE
SCHAUMBURG IL 60173-5844

94120⁷⁷⁷⁷4 B970







U.S. POSTAGE
PAID
NEWARK CA
94560
APR 3 '07
AMOUNT
$2.64
00035972-04



**Vita Administration Company**
**419 North Shoreline Boulevard**
**Mountain View, CA 94043-4680**

C  B R A
April 13, 2004

**EXHIBIT** $\underline{\phantom{xx}I\phantom{xx}}$

EDWARD NORWOOD
35156 LIDO BLVD. #J
NEWARK, CA  94560

Re: COBRA Coupon Book

Dear Edward:

Your COBRA Continuation Coverage election form has been received and processed. Enclosed is a COBRA Premium Transmittal Coupon Book. You are eligible for 18 months of coverage beginning April 1, 2004 and ending September 30, 2005.

### Premium Payment Deadlines

Please note all retroactive and current payments are due 45 days from your election date, April 12, 2004. Thereafter, all payments are due the first of each month and will be considered delinquent if not received by the fifth of each month. Your coverage will be canceled if your payment is not postmarked by thirty (30) days after the due date. Please note, although your premium payments are due on the first of the month, your coverage month may not run concurrently with the premium due date. Your coverage begins on the beginning date indicated above and runs for a period of one month from that date. A detailed description of coverage periods and payment periods may be found in the inside cover of your coupon book.

Vita Administration Company is not responsible for sending monthly bills, reminder notices, or late notices. Please sign and return the applicable coupon for each payment you make. Return envelopes have been included for your convenience.

### Premium Rates

Your current COBRA Continuation Coverage monthly premium cost for the elected coverage is indicated below. This rate is valid through December 31, 2004. In December, you will be notified of any rate and/or policy changes for your COBRA Continuation Coverage. New coupon books will not be issued at the time of a rate change. If you are not notified of a new premium amount, you are required to continue to pay your current monthly premium amount until further notice in order to continue your COBRA coverage. Often, decisions are not made on plan or rate changes until right before the premium due date. You will be notified as soon as Vita Administration Company receives confirmation of any plan or rate changes.

### Current Coverage Election

The following information reflects our records of your current COBRA elections. If this information does not agree with your records, please advise our office immediately.

| Plan | Carrier | Coverages | | Premium |
|------|---------|-----------|---|---------|
| Medical - HMO | PacifiCare | Employee + Spouse | | $469.85 |
| Rx - for PacifiCare | Express-Scripts | Employee + Spouse | | $77.16 |
| EAP | United Behavioral Health | Employee + Spouse | | $33.77 |
| | | | **Total:** | **$580.78** |

SLAC



Edward Norwood
35156 Vida Blvd. Unit 8
Newark, CA 94560
510 796-5072

PAY TO THE
ORDER OF  VITA

Five Hundred Eighty 78/100  DOLLARS

STANFORD
FEDERAL CREDIT UNION
STANFORD OFFICE
PO BOX 10690 · PALO ALTO, CA 94303-0661

4-26-04

$ 580.78

90-7772/3211

290

Premium Transmittal Coupon

Coupon ID: 566518

| Employer | Name | Date Due | Amt Due |
|---|---|---|---|
| SLAC | NORWOOD, EDWARD | 4/1/2004 | $ 580.78 |

I certify that I have read and understand the COBRA Rights and Rules Booklet as well as the premium payment provisions outlined in this coupon book. I understand that all payments are due on the first of each month and coverage will be canceled if payment is not postmarked by thirty (30) days after the due date. Once COBRA coverage is canceled, there is no option for reinstatement.

I am eligible for COBRA Continuation Coverage and I certify that
1) I have NOT become covered under any other group health plan subsequent to my COBRA
   election (unless I have a pre-existing condition), and
2) I have NOT become entitled to Medicare benefits subsequent to my COBRA election.

This is my 1st
month of coverage

4/12/04
_____
Date        Signature (Required)



**Vita Administration Company**
419 North Shoreline Boulevard
Mountain View, CA 94043

July 23, 2003

Edward Norwood
35156 Lido Blvd. #J
Newark, CA 94560

Re: COBRA Continuation Coverage

Dear Edward:

Per Stanford University's request, you are being retroactively terminated from COBRA
Continuation Coverage back to May 31, 2002 due to a Long Term Disability approval.

Enclosed please find a check in the amount of $4,547.89. This amount represents the
COBRA premium that was paid by you for coverage from June 1, 2002 through May 31,
2003.

If you have any questions, please call me at (650) 966-1492

Sincerely,

Jason Lombardi
Vita Administration Company

JL:lr

Enclosure



**VTA ADMINISTRATION COMPANY**
419 NORTH SHORELINE BOULEVARD
MOUNTAIN VIEW, CA 94043-4680
(650) 966-1492

10742

**BANK OF LOS ALTOS**
423 SAN ANTONIO DR.
MOUNTAIN VIEW, CA 94040
90-3577/1211

7/23/2003

PAY TO THE
ORDER OF ___ Edward Norwood

$ **4,547.89

Four Thousand Five Hundred Forty-Seven and 89/100************************************ DOLLARS

TWO SIGNATURES REQUIRED OVER $500.00

MEMO ___ COBRA Premium Refund

⑈010742⑈ ⑆121135773⑆

011 120758

© 1994 - 2020 INTUIT INC. # 726  1-800-433-8810

Edward Norwood
35156 Lido Blvd Unit J
Newark, California 94560

September 12, 2006


**EXHIBIT**

Director, Francis Clisham
U S Department of Labor
San Francisco Regional Office
71 Stevenson Street Suite 915
San Francisco, California 94105

RE: Edward Norwood/ Stanford Linear Accelerator Center/Sedgwick Claims/Zurich Insurance
SS# 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/ STA 020736P Long Term Disability Benefits/WCAB SFO 0465339

Dear Benefits Advisor:

This is to advise you of an ongoing issue between me and my previous employer Stanford
University(SLAC) and The Law Firm that represents them (Gordon & Rees LLP). On March 19,
2002, I was terminated by Stanford University while under my Doctors care and after I had filed
a Workers Compensation claim. At the time, I applied for disability benefits both State and Long
Term Disability. My benefits were denied, I filed a complaint with the U S Department of Labor,
San Francisco Office, Mr. Terry Frederick was my Benefits Advisor. In July 2003, The U S
Department of Labor enforced back pay and reinstatement of benefits. I received back pay and
Medical benefits for 24 months as stated under the Long Term Disability Plan for Mental
Disability. At the time while receiving those benefits, I was diagnosed with a physical disability
as well. My Employer and Claims Administrator completely ignored my Doctors and stopped
paying my benefits and discontinued my medical coverage. Additionally, Zurich continue to deny
my Workers Compensation Claim and the reason stated for denial is Stanford terminated my
employment for a good faith personnel action. After the Department of Labor enforced back pay
and reinstatement of benefits, after receiving those benefits for 24 months, I became qualified
for retirement benefits which includes my lifetime medical benefits as stated in my employer's
policies and procedures.

At the time of my termination in March 2002, Zurich/Stanford denied my Workers
Compensation Claim for my injury after I was terminated . Stanford was enforced by the U S
Department of Labor to pay LTD benefits for the same injury and now denied my Workers
Compensation Claim and future Life Time Medical Benefits with WCAB.

I am currently on Social Security Disability and require taking medication for life time and
Stanford University refuses to grant me my Life Time Medical Benefits that I earned by being an

employee for 22 years of service and two years of receiving Long Term Disability Benefits Under ERISA Guidelines as enforced by the Department of Labor.

In October 2005, on the day of my Workers Compensation Trial, the attorney that represented me dropped out of my Workers Compensation Case. My case has now been transferred to Oakland and is set for trial on January 19, 2007. I am not represented by an attorney on this issue because I feel that the U S Department of Labor made an enforcement on my LTD disability benefits which included my medical benefits and I was not represented by an attorney and now Stanford University, Zurich Insurance and Gordon & Rees denied my Workers Compensation claim132A action which include my Medical Benefits.

At this time, I would like to request assistance from the Department Of Labor on these issues since the Department Of Labor made the original enforcement for back pay and Medical Benefits under ERISA Guidelines for the same on the job injury.

Stanford University, Gordon & Rees and Zurich Insurance continue to ignore and disregard the U S Department of Labor's enforcement on this claim.

Thank you in advance for your assistance on this matter.

Respectfully Submitted

Edward Norwood

CC: Michael Lucey Gordon & Rees
    Martha Deacon, Zurich North America

Enclosures: Letter from Susan Cunningham dated July 2, 2003
           Letter from Susan Cunningham dated May 1, 2004
           Letter to DOL dated July 19, 2004

RE: Edward Norwood
Case No. SFO  465339

## PROOF OF SERVICE
--------------------------------

I VIVIAN BERNAL hereby declare that:

I  reside in the County of Alameda, California. I am over the age of eighteen and I am not a party
in this action. My home address is 35156 Lido Blvd Unit J  Newark, California 94560

On 9-13-06, I served the documents listed below on the parties listed below, by placing a true
copy thereof enclosed in a sealed envelope with postage thereon fully prepaid  in the United
States mail at Newark, California addressed as follows:

Documents Served:           Letter to U S Department of Labor dated September 12, 2006
-----------------------           Director, Francis Clisham

Parties Served :              Michael Lucey                    Zurich North America
-------------------              Gordon & Rees                  Martha Deacon
                                       275 Battery St #2000          P. O Box 7774
                                       San Francisco, Ca 94111    San Francisco, Ca 94120


                                       Mr. Lee Lyon( SLAC)
                                       2575 Sandhill Road
                                       Menlo Park, Calif 94025

                                       James Glimme
                                       Adelson, Testan & Brundo
                                       505 Sansome Street 6th Floor
                                       San Francisco Ca 94111


                                       WCAB. Oakland
                                       1515 Clay Street
                                       Oakland, Calif 94142


I declare under penalty and perjury that the foregoing is true and correct.
Executed on 9-13-06  at Newark, California

                            Vivian Bernal

Edward Norwood
35156 Lido Blvd. Unit J
Newark, California 94560
(510) 796-5072

September 29, 2006

**EXHIBIT** _____

Ms. Paula Mahoney
Benefits Advisor
U S Department of Labor/EBSA
San Francisco Regional Office
71 Stevenson Street Suite 915
San Francisco, California 94105

Re: Edward Norwood/Stanford University(SLAC)/STA020736P Long Term Disability/ WCAB
SFO 0465339

Dear Ms. Mahoney:

This will summarize our conversation on September 28, 2006 at 11:30am regarding the
enforcement for benefits and back pay that was negotiated with Stanford University back in July
2003 by Mr. Terry Frederick the Benefit's Advisor at that time. You explained to me that
according to Mr. Frederick's notes, he negotiated with Stanford University only two years of
benefits which included medical benefits. It was my understanding that my Long Term Disability
Benefits was enforced according to the guidelines as called out in the **Summary Plan
Description.** Mr. Frederick advised me at the time that Teresa Cervantes would send me a copy
of the **SPD.** I did receive a copy of the **Summary Plan Description.**

You further advised me that the U S Department of Labor /EBSA cannot enforce Stanford
University any further for benefits for me and that a **Federal Judge** in the U S District Court must
decide if I am entitled to any further benefits after 24 months. You also suggested that I seek the
advice of an Attorney. I went on to explain to you that my claim for benefits was a work related
injury that occurred while I was employed at Stanford University and a Workers Compensation
Claim was filed and after I filed a Workers Compensation Claim my employment was terminated.
I explained to you that my main concern was my lifetime Medical Benefits that I earned as an
employee after twenty-two years and I am on Social Security Disability for a work related injury.

Again, you stated to me that a **Federal District Court Judge must decide if I am entitled to
benefits after 24 months and you would mail me a brochure explaining how to pursue my
claim for benefits in U S District Court.**

Ms. Mahoney, I must further explain to you that after this enforcement was made by the U S Department of Labor Stanford University and the Law Firm of Gordon & Rees denied any wrong doings in the U S Federal District Court in San Jose California before District Court Judge Ronald M. Whyte. Stanford University is self insured, and paid me back pay and Long Term Disability Benefits to me as negotiated by the U S Department of Labor from March 19, 2002 through March 19, 2004. In Federal District Court in 2005 Stanford University denied any wrongdoings before a Federal Court Judge and Jury.

Again, I would like to thank you for taking the time to explain to me what my rights is in order obtain benefits under ERISA Guide Lines and Laws.

CC: Gordon & Rees, Michael Lucey
    Congressman, Pete Stark
    Assistant Secretary EBSA, Ann L. Combs
    DOL., Washington, D.C.

Sincerely,

Edward Norwood

Date: July 19, 2004

**EXHIBIT** _____

To: U S Department Of Labor/File
    Benefits Advisor

From: Edward Norwood

RE: Stanford University Long Term Disability Plan
    STA020736P
    Date Of Disability: March 19, 2002

I am enclosing a letter that I received From Ms. Susan Cunningham at Stanford University
dated May 1, 2004, on July 17, 2004, post dated July 15, 2004. On March 5, 2004, I filed an
appeal requesting that my claim be reviewed for Benefits Under the Stanford University Long
Term Disability Plan. On July 17, 2004, I received Ms. Susan Cunningham's letter denying my
Appeal. First off, I did not receive a response to my Appeal within (45 days) as recomended
under ERISA Guidelines. Ms. Cunningham's letter also stated that I became disabled on March
20, 2004, I became disabled on March 11, 2002, when the SLAC Medical Department Nurse
sent me home due to a Medical condition/illness . On March 19, 2002, I was treated at the
Stanford Medical Center at 10:00Am and I reported to work that afternoon and my employment
was terminated by Mr. Lee Lyon. I am still under the care of my Social Worker, Psychiatrist,
Chiropractor, Cardiologist, and My primary Physician for both Mental and Physical disabilities.

Additionally, according to The Social Security Administration, I became Disabled on March 19,
2002.

As an Employee at Stanford University From September 1, 1981 through March 19, 2002, I
contributed to the Long Term Disability Plan through payroll deduction. While I am disabled I
am entitled to benefits under the plan. Sedgwick Claims/ Stanford University continue
mismanage my Disability Claim and deny me benefits. On April 1, 2004, I received a letter from
Vita Adminstratition Company advising me that I had been placed on Cobra, after Stanford
University(SLAC) had stopped paying my Long Term Disability Benefits on March 19, 2004.

I believe that I have been discriminated against in violation of the Americans With Disabilities
Act of 1990, as amended.

Enclosures: Stanford University Letter dated May 1, 2004, from Susan Cunningham
            Stanford University Letter dated July 2, 2003, from Susan Cunningham
            Sedgwick CMS Letter dated March 10, 2004, from Dorothy Kindred

PAGE 2,
July 19, 2004

Ms. Roxanne Holmes, Sedgwick CMS
Ms. Susan Cunningham, Stanford University
Ms. Teresa Cervantes, SLAC Benefits
Ms. Stacy Haddock Sedgwick CMS
Ms. Dorothy Kindred/Appeal Specialist

Edward Norwood
35156 Lido Blvd. Unit J
Newark, California 94560
(510) 796-5072

March 1, 2007

**EXHIBIT** $\underline{K}$

Dr. Samuel W. Bodman, Secretary
U S Department of Energy
1000 Independence Avenue. , Sw
Washington, D.C. 20585

RE: Stanford Linear Accelerator Center, Edward Norwood & Lee Lyon
Director of Employee Relations

Dear Mr. Bodman:

This is to advise you of ongoing issues between the Stanford Linear Accelerator Center Mr. Lee
Lyon and I. Please note that these issues' dates back too, March 2002. I have written letters to
Dr. Jonathan Dorfan, Director of the Stanford Linear Accelerator and other Stanford University
officials regarding what happen to me while employed at the Stanford Linear Accelerator Center
for 22 years. In July 2003, The U S Department of Labor enforced benefits and Stanford payed
me after I had been terminated and I was denied disability benefits by Mr. Lee Lyon and SLAC.
I was paid Long Term Disability Benefits for two years and after receiving those benefits'
Stanford stopped paying my benefit while I was still disabled both mentally and physically. I was
not granted any type of rehabilitation when my disability benefits ended. I am currently on Social
Security Disability for the same work related injury that The Stanford Linear Accelerator and Mr.
Lee Lyon denied.

On January 19, 2007, a hearing was held at the Oakland Workers Compensation Appeals Board
Judge Stanley Shields presiding. Mr. Lee Lyon, SLAC and Zurich Insurance Claims that they
terminated my employment based on "a good faith personnel action." This occurred when Mr.
Lyon approved to combine my position with another employee's position and I became
displaced in the work place, which caused all types of mental and physical health problems for
me. It was made clear by Judge Shields that combining an employee's job is not considered as a
"good faith personnel action" under the laws of the State of California. In March 2002, when I
was terminated the State of California found that Stanford University was liable for payment of
my disability benefits. Stanford University sent me to their own Doctor and he placed me on
Long Term Disability. Stanford Linear Accelerator Center and Mr. Lee Lyon and Zurich
Insurance still denies my benefits in January 2007. I'm not represented by an attorney at this

time. Because the previous attorney held my Workers Compensation Case for three years and then removed himself from my case in October 2005. As an Employee, I paid into the Long Term Disability Plan that would provide me benefits until I am 65 years of age while disabled. I have both physical and mental disabilities. Recently, I Contacted the U S Department of Labor regarding my Long Term Disability Benefits, I was told by a Benefits Advisor that in order for me to receive further disability benefits under ERISA Laws and Guidelines. I must file a complaint in U S District Court. As an employee for 22 years I paid into the Long Term Disability Plan, My employer refuses to provide me benefits until I'm 65 years old while disabled. My doctors have written in several reports that I cannot return to work at The Stanford Linear Accelerator Center because of the stressful environment as well as my physical and mental health conditions.

I have made several offers to Stanford University and Zurich Insurance to resolve the issues so I can make an attempt to rehabilitated myself to move on with my life. Mr. Lee Lyon and Zurich Insurance Refuses to deal in Good faith.

At this time, I' m enclosing to your office, previous correspondence regarding these issues for you to review and perhaps to provide assistance in resolving the issues. Since I was terminated in March 2002, and no benefits since March 2004, this has created tremendous amounts of burden and stress for me and my family.

I feel that these actions by denying my Long Term Disability Benefits and /or Workers Compensation benefits are Retaliation by Stanford University/SLAC , Zurich Insurance and all parties involved for the actions by the attorney that once represented me in a civil case, the enforcement by the U S Department of Labor and The State of California EDD.

Because of all the above actions against me and after how my employer has treated me, after I spent half of my life as an employee. I have had serious thoughts of committing suicide and am under the care of my Psychiatrist and Psychotherapist with medication.

Your assistance in providing a resolution to these problems would be appreciated.

Sincerely

Edward Norwood

Enclosure: The letter from Judge Stanley E. Shields and minutes of Hearing January 19, 2007
         A letter to U S Department of Labor Washington, D.C., Assistant Secretary EBSA

CC: Dr. Jonathan Dorfan, Director SLAC
    Mr. Raymond L. Orbach, Secretary of Science
    U S Department of Labor EBSA, Washington, D.C.



**Department of Energy**
Office of Science
Washington, DC 20585

**EXHIBIT** _____

June 1, 2007

Mr. Edward Norwood
35156 Lido Blvd Unit J
Newark, CA 94560

Dear Mr. Norwood:

We are in receipt of your March 1, 2007, letter and attachments. In your letter, you state
that you were employed at the Stanford Linear Accelerator Center until 2002. The
documents you include with your letter indicate that you recently challenged the denial of
your workers' compensation claim to the State of California Department of Industrial
Relations, Division of Workers' Compensation. The documents you provided further
indicate that a hearing on the matter was scheduled to take place on April 27, 2007.
Finally, your letter also describes your disagreement with your employer's determination
regarding payment of long term disability benefits.

Stanford University, not the Department of Energy, was your employer at the time that
you stopped working at the Stanford Linear Accelerator Center. In your letter, you state
that you utilized the state forum available to you to dispute the denial of your workers'
compensation claim. In addition, your letter claims that a representative of the
Department of Labor informed you that you may file a complaint in the U.S. federal
district court regarding your employer's non-payment of disability benefits since 2004.

Your letter indicates that you have pursued legal avenues available to you to resolve
disputes surrounding the termination of your employment with Stanford University. The
Department of Energy was never your employer and, therefore, cannot take a position
regarding your claims against your former employer.

Sincerely,

Patricia M. Dehmer
Deputy for Programs
Office of Science

Printed with soy ink on recycled paper

Edward Norwood
35156 Lido Blvd. Unit J
Newark, Ca 94560

**EXHIBIT** $\underline{L}$

October 5, 2006

Ms. Ann L. Combs
Assistant Secretary
U S Department of Labor/EBSA
200 Constitution Ave NW Suite S-2524
Washington, D.C. 20210

RE: Stanford University(SLAC)

Dear Ms. Combs:

I am writing you to request assistance on my claim for benefits, I am a 54-year-old african-American male that was displaced on the job by my previous employer Stanford University's Stanford Linear Accelerator Center in March of 2002. When this occurred, I suffered a mental and physical on the job injury. Before I could request Family Medical Leave and after I filed a Workers Compensation Claim at my employers Medical Department my employment was terminated by the Director of Human Resources Mr. Lee Lyon. I was denied disability Benefits and harassed by my employer. I filed a complaint with the U S Department of Labor/EBSA San Francisco Regional Office. I filed a complaint with the EEOC, and Stanford Denied any wrong doings. In July 2003, The U S Department of Labor enforced back pay and Medical Benefits.

I hired an Attorney to represent me on my Workers Compensation Claim that I filed before I was terminated. In April 2002, Zurich Insurance, Stanford University and Sedgwick Claims Management Services denied my Workers Compensation Claim and The State of California and The U S Department of Labor enforced my Disability Benefits Short Term and Long Term. Stanford University Continue to deny any wrong doings.

The Attorney that I hired decided to hold my Workers Compensation Claim from 2002 through October 2005 and on the day of trial the Workers Compensation Judge allowed the same attorney to drop out of my case. In January 2005, the same attorney represented me in U S District Court in a retaliation Case. A case that I lost and was not prepared to litigate. This occurred after the Department of Labor and The State of California had enforced Medical Benefits, Disability Benefits and after I had been placed on Social Security Disability for a work related injury. Both parties were aware of the enforcement by the U S Department of Labor and The State of California (EDD).

After I had hired this attorney, I later found out that he had a serious drinking problem, he would call me at 12:00 midnight to discuss my case while he was intoxicated. During the trial in U S District Court he was under the influence of Alcohol during the entire trial. While representing me he was arrested for drunk in public and his driving privileges were suspended. I filed a complaint to the State Bar of California and the State Bar refuse to take actions against this Attorney. I am in the process of filing an Accusation against this attorney with the Supreme Court of California.

These actions have affected my Workers Compensation case and all other related disability issues including my Long Term Disability Benefits and my family as well.

At this time, I feel that this is retaliation against me by my previous employer Stanford University for the actions that the attorney that mis represented me in U S District Court and then later were allowed to drop out of my Workers Compensation Case after he lost in District Court.

Stanford University(SLAC ) a U S Government Contractor for The U S Department of Energy is involved in this type of activity and no one will enforce my life time medical benefits that I earned as an employee for 22 years. I am on Social Security Disability with physical and mental disabilities that will require me to take medication for life time. I cannot afford to pay another attorney because of my family income.

Your assistance on this matter would be greatly appreciated.

Sincerely

Edward Norwood

RE: Edward Norwood
SFO 0465339

## PROOF OF SERVICE

------------------------------

I VIVIAN BERNAL hereby declare that:

I reside in the County of Alameda, California. I am over the age of eighteen and I am not a party
in this action. My home address is 35156 Lido Blvd Unit J Newark, California 94560

On 11-6-06, I served the documents listed below on the parties listed below, by placing a true
copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United
States mail at Newark, California addressed as follows:

Documents Served:              Letter to U S Department of Labor dated October 5, 2006
-----------------------        Ms. Ann L. Combs

Parties Served :               Michael Lucey                     Zurich North America
-------------------            Gordon & Rees                     Martha Deacon
                               275 Battery St #2000              P. O Box 7774
                               San Francisco, Ca 94111           San Francisco, Ca 94120

                               Mr. Lee Lyon( SLAC)
                               2575 Sandhill Road
                               Menlo Park, Calif 94025

                               James Glimme
                               Adelson, Testan & Brundo
                               505 Sansome Street 6th Floor
                               San Francisco Ca 94111

                               WCAB. Oakland
                               1515 Clay Street
                               Oakland, Calif 94142

I declare under penalty and perjury that the foregoing is true and correct.
Executed on November 6, 2006 at Newark, California.

Vivian Bernal

**STANFORD UNIVERSITY**
655 Serra Street
Stanford, California  94305-6110

May 1, 2004

Mr. Edward Norwood
35156 Lido Blvd., #J
Newark, CA  94560

Dear Mr. Norwood:

On March 5, 2004, you appealed to Stanford University to reinstate your Long Term
Disability benefits.  I regret to inform you that your request has been denied in
accordance with the provisions of the Stanford University Long Term Disability Plan:

**3.04        EXCLUSIONS AND LIMITATIONS**

No Participant shall be entitled to Long Term Disability benefits if his or her
Disability arises out of, relates to, is caused by or results from:

F.  mental illness, disease or disorder, functional nervous disorder, alcoholism,
or drug addiction, unless the Participant is, at the time benefits would
otherwise be payable, confined as an inpatient in a Mental Hospital or other
institution licensed to provide care and treatment for the condition causing
the Disability; provided, however that (i) the confinement requirement shall
not apply during the first twenty-four (24) months of Disability, and (ii) the
Plan Administrator may approve payment of benefits after twenty-four (24)
months of Disability if the Participant is receiving treatment or
rehabilitation under a Plan of Rehabilitation as described in 4.03B;

You became disabled on March 20, 2002, based on the diagnosis of major depression, and
twenty-four (24) months of Disability ended on March 19, 2004, in accordance with the
Plan as stated above.

For this reason, I concur with the Appeals Committee recommendation, and deny your
appeal.

**EXHIBIT  M**

If you have any questions regarding this appeal, please feel free to contact BenefitSU at (650) 736-2985 or toll-free at (977) 905-2985.

Sincerely,

*Susan Cunningham*

Susan Cunningham
Benefits Programs Manager

cc:  Sedgwick CMS
     Teresa Cervantes - SLAC

**STANFORD UNIVERSITY**
655 Serra Street
Stanford, California  94305-6110

**EXHIBIT** $\bigwedge$

July 2, 2003

Mr. Edward Norwood

Re:     Benefit Appeal to Change Medical Plans for 2002

Dear Mr. Norwood:

The Benefits Appeal Committee has reviewed your appeal for Long Term Disability benefits.

The Committee has approved your appeal based on the following facts. The initial denial of benefits was based on two provisions of the plan.

1. The fact that your employment and hence your participation in the plan was terminated prior to a physician making a disability determination.

*However, the assessment of the independent medical examiner states your disability most probably predated your termination date.*

2. The fact that your treating provider, Gloria Baxter LSW, did not have the required license or certification to determine disability under the plan.

*It is noted that you attempted, in good faith, to make an appointment with an eligible provider but had been unable to schedule any treatment prior to the employment termination date.*

The committee has determined that these extenuating circumstances in your case allow for some latitude in the benefit determination. The committee believes that your situation meets the intent of the plan to provide benefits for absence from work due to disability.

If you have any questions regarding your appeal, please feel free to contact BenefitSU at 650-736-2985.

Sincerely,

Susan Cunningham
Manager – Benefit Programs

cc     Benefits Representative
        Personnel File
        Appeal File

C:\Documents and Settings\Susic\My Documents\Appeals\Norwood.doc



## Sedgwick CMS



**EXHIBIT** ◯

**Sedgwick Claims Management Services, Inc.**
3280 E. Foothill Blvd., Suite 250, Pasadena, CA 91107
Telephone 626 568-1415 Toll Free 800 939-4911  Facsimile 626 568-1440

February 19, 2004

Mr. Edward Norwood
35156 Lido Blvd., #J
Newark, CA  94560

Re:    Plan Name:          Stanford University Long Term Disability Plan
        Claim No.:           STA020736P
        Date of Disability:   03/20/02

Dear Mr. Norwood:

In accordance with the provisions of the Stanford University Long Term Disability Plan, there is a twenty-four (24) month maximum benefit limitation when your disability is based on a mental diagnosis.

As stated in Section 3.04 F. of the Stanford University Long term Disability Plan:

### 3.04    EXCLUSIONS AND LIMITATIONS

No Participant shall be entitled to Long Term Disability Benefits if his or her Disability arises out of, relates to is caused by or results from:

F.    Mental illness, disease or disorder, functional nervous disorder, alcoholism, or drug addiction, unless the Participant is, at the time benefits would otherwise be payable, confined as an inpatient in a Mental Hospital or other institution licensed to provide care and treatment for the condition causing the Disability; provided, however that (i) the confinement requirement shall not apply during the first twenty-four (24) months of Disability, and (ii) the Plan Administrator may approve payment of benefits after twenty-four (24) months of Disability, if the Participant is receiving treatment or rehabilitation under a Plan of Rehabilitation as described in 4.03B;

You became disabled on March 20, 2002, based on the diagnosis of major depression, and twenty-four (24) months of Disability will end on March 19, 2004, in accordance with the Plan as stated above.

Edward Norwood
February 19, 2004
Page 2

Your claim for Long Term Disability Benefits for March 20, 2004 and continuing are denied. If you disagree with this determination, you have the right to file an appeal. The procedures for filing an appeal are enclosed.

Sincerely,

Stacy Haddock
Claims Examiner

Enclosure:    Appeal Procedures

cc:    SLAC – Teresa Cervantes

**STANFORD UNIVERSITY**
**655 Serra Street**
**Stanford, California   94305-6110**

July 2, 2003

Mr. Edward Norwood

Re:      Benefit Appeal to Change Medical Plans for 2002

Dear Mr. Norwood:

The Benefits Appeal Committee has reviewed your appeal for Long Term Disability benefits.

The Committee has approved your appeal based on the following facts. The initial denial of benefits was based on two provisions of the plan.

1. The fact that your employment and hence your participation in the plan was terminated prior to a physician making a disability determination.

   *However, the assessment of the independent medical examiner states your disability most probably predated your termination date.*

2. The fact that your treating provider, Gloria Baxter LSW, did not have the required license or certification to determine disability under the plan.

   *It is noted that you attempted, in good faith, to make an appointment with an eligible provider but had been unable to schedule any treatment prior to the employment termination date.*

The committee has determined that these extenuating circumstances in your case allow for some latitude in the benefit determination. The committee believes that your situation meets the intent of the plan to provide benefits for absence from work due to disability.

If you have any questions regarding your appeal, please feel free to contact BenefitSU at 650-736-2985.

Sincerely,



Susan Cunningham
Manager – Benefit Programs

cc      Benefits Representative
        Personnel File
        Appeal File



C:\Documents and Settings\Susic\My Documents\Appeals\Norwood.doc

# Sedgwick CMS

**Sedgwick Claims Management Services, Inc.**
3280 E. Foothill Blvd., Suite 250, Pasadena, CA 91107
Telephone (626) 568-1415 or (800) 939-4911  Facsimile (626) 568-1440

February 11, 2003

**EXHIBIT** $\underline{P}$

Mr. Edward Norwood
35156 Lido Blvd. #J
Newark, CA 94560

RE:     Plan Name/Location: Stanford University Long Term Disability Plan
        Date of Disability:    02/20/02
        Claim No.:             STA020736P

Dear Mr. Norwood:

Sedgwick CMS is the Claims Administrator for the Stanford University Long Term
Disability (LTD) Benefit Plan. We have carefully evaluated the information submitted in
support of your claim for disability benefits under this Plan. We have reviewed medical
information from Dr. Julies M. Tanenbaum, Dr. Rex Chiu, Mary Fosten-English, MFCC,
Gloria Baxter, LCSW and The Stanford Linear Accelerator Center (SLAC) Medical
Office.

Our records document that you and Dr. Jules M. Tanenbaum indicated on your LTD
claim form, that the first day you were unable to work was February 20, 2002, and your
first day of treatment with Dr. Tanenbaum was on May 9, 2002. Additionally, your
employment was terminated by Stanford Linear Accelerator Center on March 19, 2002.

According to the information on file, Dr. Rex Chiu saw you on March 19, 2002 and April
1, 2002. Dr. Chiu's records document that you were treated for elevated blood pressure,
you were encouraged to exercise, cut down on salt in the diet and to lose weight. Dr.
Chiu's notes from March 19, 2002 indicate that you reported to be under a lot of stress.
However, the notes from April 1, 2002 indicate that you reported to be under less stress,
because you had been laid off. These records do not document that Dr. Chiu released you
from work as a result of a medical condition.

As described in the following sections of the Plan document, the Plan Administrator shall
make a determination as to whether a Disability exists on the basis of Objective Medical
Evidence; additionally Objective Medical Evidence shall be an observation by a
Physician:

Edward Norwood
February 11, 2003
Page Two

Section 3.03 states:

**3.03    LONG TERM DISABILITY DEFINED**

A Long Term Disability shall be deemed to exist if:

A.      during the first fifteen (15) months of Disability, the Participant is completely unable, due to his or her illness, injury, to perform the material duties of his or her normal occupation and is not engaged in any occupation or employment for wage or profit; except as otherwise provided elsewhere in the Plan; and

B.      following the first fifteen (15) months of Disability, as defined above, the Participant is completely unable, due to his or her illness, injury, to perform the duties of any occupation for which he or she is or may reasonably become fitted by training, experience or education.

On the basis of Objective Medical Evidence, the Plan Administrator shall make a determination as to whether a Disability, as defined herein, exists with respect to the Participant.   For the purpose of assisting the Plan Administrator in making such determination, following fifteen (15) months of Disability, the Plan Administrator shall apply the medical criteria set forth in the Social Security Regulations pertaining to Disability claims under Title II of the Social Security Act.

Section 1.11 states:

**1.11    OBJECTIVE MEDICAL EVIDENCE**

"Objective Medical Evidence", as used herein, shall mean observation by or demonstration to a Physician of, anatomical, physiological, or psychological manifestations of illness or injury.    These signs are observed through medically accepted clinical techniques such as medical history, physical examination, and laboratory findings.  Laboratory findings are manifestations of anatomical, physiological, or psychological phenomena demonstrated by chemical, electrophysiological, roentgenological, or    psychological    tests. Objective Medical Evidence cannot be shown by symptoms which are solely reported by the Participant.

Edward Norwood
February 11, 2003
Page Three

As described in the following sections of the Plan document, you must be under the regular and continuous care and treatment of a licensed medical doctor before you can receive benefits under the Stanford University Long Term Disability Benefit Plan:

Section 3.04 D states:

### 3.04    EXCLUSIONS AND LIMITATIONS

No Participant shall be entitled to Long Term Disability benefits if his or her Disability arises out of, relates to, is caused by or results from:

D.        any illness or injury for which the Participant is not under regular and continuous care and treatment of a doctor of medicine, doctor of osteopathy, or other licensed practitioner operating within the scope of his or her practice and under the laws of the practitioner's jurisdiction unless such regular and continuous care and treatment are not medically indicated;

Section 1.13 describes a Physician as:

### 1.13    PHYSICIAN

"Physician" means a licensed doctor of medicine (M.D.), doctor of osteopathy (D.O.), or other licensed practitioner of the medical arts operating within the scope of his or her practice and under the laws of the practitioner's jurisdiction.

A Physician must be someone other than the Employee or a member of the Employee's immediate family (spouse, daughter, son, father, mother, sister or brother by blood, marriage or adoption).

"Physician" includes a psychologist licensed in the state of practice, with a doctorate degree in psychology.

The records on file indicate that Mary Fosten-English, a Marriage and Family Therapist saw you, on October 23, 2001 and December 6, 2001, she referred you to Gloria Baxter, a Licensed Clinical Social Worker. Additionally, the records document that a nurse saw you at the SLAC Medical Department on March 7, 2002, March 11, 2002 and March 18, 2002. Ms. Fosten-English, Ms. Baxter and the SLAC nurse are not physicians as described by the Plan, and you did not start treating with Dr. Tanenbaum until May 9, 2002.

Edward Norwood
February 11, 2003
Page Four

Therefore, your claim for benefits from February 20, 2002 through March 19, 2002 is denied, as you were not under the regular and continuous care and treatment of a Physician, additionally your claim for disability is not supported by Objective Medical Evidence, as observed by a Physician until May 9, 2002. Furthermore, Dr. Chiu, who saw you on March 19, 2002 does not support your claim for disability.

As described in the following sections of the Plan document, you must be a Plan Participant before you can receive benefits under the Stanford University Long Term Disability Benefit Plan.

Section 1.12 states:

**1.12     PARTICIPANT**

"Participant" means an Employee who satisfies the eligibility requirements of Section 2.01.

Section 2.01 states:

**2.01     ELIGIBILITY FOR PARTICIPATION**

Employees shall be eligible to participate in the Plan as of the first day of regular full-time or part-time (working 20 hours or more per week) employment.

If an Employee is not actively at work due to Disability on the date his or her participation would otherwise have been effective, his or her participation date shall be deferred until the first day upon which he or she returns to active work as an Employee of the University.

On the date an Employee is eligible to participate in the Plan, or the date thereafter on which the Employee is allowed to change the level of coverage, he or she may choose:

Option 1 -     replaces up to 50% of the Participant's Compensation for benefit purposes, or

Option 2 -     replaces up to 66 2/3% of the Participant's Compensation for benefit purposes.

If an Employee fails to elect a level of coverage for Long Term Disability benefits, then the Employee shall be deemed to have elected coverage under Option 1, above.

Edward Norwood
February 11, 2003
Page Five

Section 2.02 A. states:

## 2.02    CESSATION OF PARTICIPATION

A Participant shall cease to participate in the Plan upon the earliest of the following dates:

A.        the date he or she ceases to be an Employee for a reason other than his or her Disability;

Our records document that your employment terminated with SLAC on March 19, 2002, therefore your participation in the plan terminated on that day also. As indicated above you saw Dr. Chiu on that same date, however Dr. Chiu did not support your claim of diasbility. Therefore, there is no Objective Medical Evidence supporting you were unable to perform the duties of your usual and customary occupation as a Assistant Stores Manager on March 19, 2002 and your claim for benefits is denied from March 20, 2002 and thereafter.

In order to perfect this claim, you will need to file an appeal and submit Objective Medical Evidence that shows that you were under the regular and continuous care and treatment of a Physician, who supports your claim for disability from February 20, 2002 through May 9, 2002.

If you disagree with this determination, you have the right to file an appeal. The procedures for filing an appeal are enclosed.

If you have any questions about this matter, please feel free to contact me.

Sincerely,

Stacy Haddock
LTD Claims Examiner

Enclosure:  Appeal Procedures

SH/li

cc:     SLAC - Teresa Cervantes



## Sedgwick CMS

**EXHIBIT** 

**Sedgwick Claims Management Services, Inc.**
3280 E. Foothill Blvd., Suite 250, Pasadena, CA 91107
Telephone (626) 568-1415 or (800) 939-4911  Facsimile (626) 568-1440

July 22, 2003

Mr. Edward Norwood
35156 Lido Blvd. #J
Newark, CA 94560

RE:     Plan Name/Location: Stanford University Long Term Disability Plan
        Date of Disability:     03/20/02
        Claim No.:              STA020736P

Dear Mr. Norwood:

As the Claims Administrator for the Stanford University Long Term Disability (LTD) Benefit
Plan, it is our responsibility to carefully examine the information, which was submitted in
support of your claim for LTD benefits. You will be pleased to learn that your claim for benefits
has been approved. Under the terms of the LTD Plan, there is a ninety (90) day elimination
period before benefits are payable, which you will have satisfied as of June 18, 2002. Your
Gross monthly benefit of $2,847.48 is based on 66 2/3% of your monthly salary at date of
disability. These benefits are paid **semi-monthly**, providing that you continue to meet all of the
requirements of the Plan. The Stanford University Long Term Disability Plan benefits are
taxable.

Payments from the Stanford University Long Term Disability Plan are designed to be a
secondary source of income while you are totally disabled. Therefore, any LTD benefit payable
to you is reduced by the amount of benefits which you are receiving, or may be eligible to
receive, from other sources. These sources include but are not limited to: State Disability
Insurance Benefits, Short Term Disability Benefits, Workers' Compensation Insurance Benefits,
Social Security Retirement or Disability Benefits and Employer Pension or Annuity Benefits.

*Please advise immediately* if you are eligible for and/or receiving any of the aforementioned
benefits, as it will have a direct effect on the benefits already issued to you.

Your LTD benefit will be paid as follows from June 18, 2002 through May 8, 2003:

| | |
|---|---|
| **Gross Semi-Monthly LTD Benefit:** | **$1,423.74** |
| **Gross Semi-Monthly Voluntary Plan Benefit:** | **$1,061.66** |
| **Semi-Monthly LTD Benefit Prior to Taxes** | |
| **and/or Premium Deductions:** | **$  362.07** |

Our records indicate that you received Voluntary Plan Benefits from May 8, 2002 through May
8, 2003. Since your Voluntary Plan Benefits stopped on May 9, 2003, your semi-monthly
benefit will be $1,423.74, assuming no other offset.

Edward Norwood
July 22, 2003
Page Two

These benefits are provided to you because the medical information we received shows that your Disability prevents you from doing your usual work during the first fifteen months of disability, as indicated in Section 3.03 of the Stanford University Long Term Disability Plan, the first fifteen (15) months of your Disability has ended as of June 20, 2003. To be eligible for LTD benefits after this date, you must be unable to perform the duties of any occupation for which you are reasonably qualified by reason of education, training or experience and meet Social Security Disability criteria.

### 3.03    LONG TERM DISABILITY DEFINED

A Long Term Disability shall be deemed to exist if:

A.      during the first fifteen (15) months of Disability, the Participant is completely unable, due to his or her illness, injury, to perform the material duties of his or her normal occupation and is not engaged in any occupation or employment for wage or profit; except as otherwise provided elsewhere in the Plan; and

B.      following the first fifteen (15) months of Disability, as defined above, the Participant is completely unable, due to his or her illness, injury, to perform the duties of any occupation for which he or she is or may reasonably become fitted by training, experience or education.

On the basis of Objective Medical Evidence, the Plan Administrator shall make a determination as to whether a Disability, as defined herein, exists with respect to the Participant. For the purpose of assisting the Plan Administrator in making such determination, following fifteen (15) months of Disability, the Plan Administrator shall apply the medical criteria set forth in the Social Security Regulations pertaining to Disability claims under Title II of the Social Security Act.

Due to the circumstances and timing on the determination of the approval of your claim, we will immediately begin our investigation to determine your further entitlement to benefits under this Plan. Your LTD benefits will cease as of June 20, 2003, pending the results of our investigation. An integral part of this investigation is obtaining current objective medical evidence as required under the Plan provisions. To obtain this medical evidence, we will be contacting Dr. Jules M. Tanenbaum, who according to our records, is your primary physician. **If you are currently under the care of another physician, please provide us with the names(s), address(s), and telephone number(s) of all medical providers from whom you are receiving treatment.** We will also contact these other sources so that you can be assured that we have all available medical information when we make our decision to continue or deny further LTD benefits. If it becomes necessary to authorize an Independent Medical Examination, you will be notified.

Edward Norwood
July 22, 2003
Page Three

If you have not already done so, you will be requested to file for Social Security Disability Benefits. We are sending you a separate letter outlining this procedure. If you have already been awarded Social Security Disability, please forward us a copy of your award letter. Note: If you have dependents under 18 years of age and they were approved for Social Security Dependent Benefits, please forward a copy of their award letter as well.

Due to the nature of your Disability, the LTD benefits available to you will be limited in accordance with Section 3.04 of the Plan, which states:

### 3.04        EXCLUSION AND LIMITATIONS

No Participant shall be entitled to Long Term Disability benefits if his or her Disability arises out of, relates to, is caused by or results from:

F.    mental illness, disease or disorder, functional nervous disorder, alcoholism or drug addiction, unless the Participant is, at the time benefits would otherwise be payable, confined as an inpatient in a Mental Hospital or other institution licensed to provide care and treatment for the condition causing the Disability; provided, however that (i) the confinement requirement shall not apply during the first twenty-four (24) months of Disability, and (ii) the Plan Administrator may approve payment of benefits after twenty-four (24) months of Disability if the Participant is receiving treatment or rehabilitation under a program approved by the Plan Administrator or individuals acting under his or her direction;

In your case, the maximum benefit period of 24 months of Disability will end March 19, 2004.

You indicated on you claim form that you became disabled on February 20, 2002. Your employer confirmed that your last day worked was March 19, 2002. Therefore, based on the information provided, your claim for benefits from February 20, 2002 through March 19, 2002 is denied. We have amended your date of disability to March 20, 2002 and your benefits will begin on as of June 18, 2002 after the elimination period as indicated in section 3.02 of the Stanford LTD Plan, which states:

### 3.02        ELIMINATION PERIOD

A.    A Participant who sustains a Long Term Disability within the meaning of the Plan shall, subject to the provisions of the Plan, become eligible to receive the benefits described in Article IV only after such Disability shall have existed for ninety (90) consecutive days.

Edward Norwood
July 22, 2003
Page Four

If you believe your benefits should begin sooner, you may appeal this denial and provide documentation that you did not work from at anytime from February 20, 2003 through March 19, 2003. If you disagree with this decision, you have the right to file an appeal. The procedures for filing such an appeal are enclosed.

***This letter is not a waiver of any of our rights to enforce all of the provisions in the LTD Plan.***

We at Sedgwick CMS are proud of our reputation for prompt and courteous service. If you have any questions, or if we may be of any assistance to you while you are disabled, please contact us at (800) 939-4911.

Sincerely,

Stacy Haddock
LTD Claims Examiner

Enclosure:     Appeal Procedures

SH/li

cc:     SLAC – Teresa Cervantes

## Sedgwick CMS                                 **EXHIBIT** R

**Sedgwick Claims Management Services, Inc.**
3280 E. Foothill Blvd., Suite 250, Pasadena, CA 91107
Telephone 626 568-1415 Toll Free 800 939-4911   Facsimile 626 568-1440

October 14, 2003

Mr. Edward Norwood
35156 Lido Blvd., #J
Newark, CA 94560

RE:   Plan Name/Location No.:   Stanford University Long Term Disability Plan
      Date of Disability:        02/20/02
      Claim No.:                 STA020736P

Dear Mr. Norwood:

Sedgwick CMS is the Claims Administrator for the Stanford University Long Term Disability (LTD) Plan. We have completed our review of your claim as it pertains to continued eligibility for LTD Benefits. Based on our review of the medical information currently on file, we believe that you meet Social Security Disability criteria and your condition prevents you from working in any occupation. You will remain eligible for benefits to March 19, 2004 as long you do become awarded Social Security Disability and you continue to meet all of the Plan provisions.

Due to the nature of your disability, the Stanford University LTD benefits available to you are limited in accordance with Section 3.04 F. of the Plan which states:

**3.04     EXCLUSIONS AND LIMITATIONS**

No Participant shall be entitled to Long Term Disability benefits if his or her Disability arises out of, relates to, is caused by or results from:

F.     mental illness, disease or disorder, functional nervous disorder, alcoholism, or drug addiction, unless the Participant is, at the time benefits would otherwise be payable, confined as an inpatient in a Mental Hospital or other institution licensed to provide care and treatment for the condition causing the Disability; provided, however that (i) the confinement requirement shall not apply during the first twenty-four (24) months of Disability, and (ii) the Plan Administrator may approve payment of benefits after twenty-four (24) months of Disability if the Participant is receiving treatment or rehabilitation under a Plan of Rehabilitation as described in 4.03B.

Edward Norwood
October 14, 2003
Page Two

Based on your condition, major depression, the maximum benefit period of 24-months of disability will end March 19, 2004. To be eligible for LTD benefits after this date, you must meet the exceptions described above or you must be disabled due to a physical condition which prevents you from performing the duties of any occupation for which you are reasonably qualified based on your education, training, or experience.

From time to time, we will be contacting you and your physician for information regarding your disability status. Please respond and also encourage your physician to respond promptly to our requests. Additionally, we ask you to continue to purse your claim for Disability benefits with Social Security, and copy us on any correspondence you receive from Social Security.

As you are aware, your LTD benefits are affected by benefits you receive from other sources while you are disabled. Please keep us informed of any changes in your income or Social Security benefits while you are disabled.

If you have any questions, please feel free to contact us at (626) 568-1415.

Sincerely,

Stacy Haddock
LTD Claims Examiner

SH/li

cc:    SLAC - Teresa Cervantes

# Preferred Works ℠

## *Sedgwick Claims Management Services*

November 25, 2002

**EXHIBIT** $\underline{S}$

Mr. Edward Norwood
35156 Lido Blvd., #J
Newark, CA 94560

Re:    Plan Name/Location No.:    Stanford Voluntary Plan/1000
       Date of Disability:        3/20/02
       Claim No.:                 STA020169S

Dear Mr. Norwood:

In order to properly document your claim for Disability benefits, Preferred Works is exercising the right provided in the Stanford Voluntary Plan to have you examined by a physician of our choice. There will be no cost to you for this exam.

As soon as you receive this letter, you are requested to contact the office of Dr. William Anderson to confirm a prearranged appointment scheduled for:

|            |                         |
|------------|-------------------------|
| Date:      | December 9, 2002        |
| Time:      | 12:30 p.m.              |
| Address:   | 3331 Sacramento St.     |
|            | San Francisco, CA 94118 |
| Telephone: | 805-815-0496            |

If you have any medical reports that support your claim for total Disability, please take them to this examination. Also, Preferred Works has submitted copies of your records directly to the examining physician's office to aid in the completion of this examination.

Since further benefits are contingent upon your cooperation in this matter, we know that you will give it your prompt attention.

If you have any questions, please call me.

Sincerely,

*Adrian Duenas*

Adrian Duenas
Claims Examiner

**EXHIBIT** _T_

EDWARD NORWOOD

| System ID | 0000035084 |
| Pay Period End | 07/31/2003 |
| Check Date | 07/22/2003 |
| Check/Advice | 110484 |

**EARNINGS**

| | This Period | | YTD (*12/16/02-12/15/03) | |
| | Hours | Rate | Amount | Hours | Amount |
| LTD | | | 11,639.86 | | 11,639.86 |

Gross Pay     11,639.86     11,639.86

**DEDUCTION Amount**

| Before Tax | This Period | YTD* |

Other Deductions

**DISTRIBUTION**

Check 110484     Offcycle 7,728.64

Total Net Pay     7,728.64

| | Federal | CA State |
| W4/DE4 | | |
| Marital | Single | Single |
| Exemptions | 8 | 8 |
| Addl Amount | | |

| TAX Amount | This Period | YTD* |
| FWH | 2945.15 | 2,945.15 |
| SWH | 966.07 | 966.07 |
| | | |
| Total | 3911.22 | 3,911.22 |
| FWH Taxable | 11639.86 | 11,639.86 |

---

THIS CHECK HAS MULTIPLE SECURITY FEATURES TO DETER FRAUD AND COUNTERFEITING.

Mellon Bank, Pittsburgh, PA
IN COOPERATION WITH:
Bank of The West
Payable if desired at:
One Front Street, San Francisco, CA 94111

**STANFORD LINEAR ACCELERATOR CENTER**
STANFORD UNIVERSITY
2575 SAND HILL RD, MENLO PARK, CA 94025
DOE CONTRACT DE-AC03-76SF00515

60-1160
0433

DATE     07/22/2003

PAY     Seven Thousand Seven Hundred Twenty-Eight and 64/100 Dollars

PR Check

TO THE
ORDER
OF     Edward Norwood
Check Route 66

110484

AMOUNT
$7,728.64

OVER 5000 REQUIRES TWO SIGNATURES

⑈0110484⑈ ⑆043301601⑆ 037⑈0597⑈

EXHIBIT _____

THIS CHECK HAS MULTIPLE SECURITY FEATURES TO DETER FRAUD AND COUNTERFEITING.

Mellon Bank, Pittsburgh, PA
IN COOPERATION WITH
Bank of The West
Payable if desired at:
One Front Street, San Francisco, CA 94111

**STANFORD LINEAR ACCELERATOR CENTER**
STANFORD UNIVERSITY
2575 SAND HILL RD., MENLO PARK, CA 94025
DOE CONTRACT DE-AC03-76SF00515·

60-0100.
0433

DATE    10/13/2003

PAY    Six Thousand Five Hundred Forty-Three and 86/100 Dollars

TO THE
ORDER
OF    Edward Norwood
Check Route 66

PR Check    111872

AMOUNT
$6,543.86

OVER $5,000 REQUIRES TWO SIGNATURES

⑈0⑈⑈8⑈7⑈2⑈  ⑈:0⑈4⑈3⑈3⑈0⑈⑈6⑈0⑈:  ⑈⑈:  0⑈3⑈7⑈⑈0⑈5⑈9⑈7⑈⑈

SEE REVERSE SIDE FOR OPENING INSTRUCTIONS

**STANFORD LINEAR ACCELERATOR CENTER**
PAYROLL, MAIL STOP 05
2575 SAND HILL RD., MENLO PARK, CA 94025

Edward Norwood
Check Route 66

15-OCT-2003

 **MAIL**                                 Print - Close Window

**Date:** Mon, 11 Sep 2006 08:38:12 -0700 (PDT)

**From:** "Edward Norwood" <enor322980@sbcglobal.net>

**Subject:** Fwd: RE: Workers Compensation Case 132A

**To:** chuser@slac.stanford.edu, Lyon@slac.stanford.edu, Jonathan.Dorfan@slac.stanford.edu

EXH . U

CC: Lee Lyon and Huser

**Mike Lucey <MLucey@gordonrees.com>** wrote:

From: "Mike Lucey" <MLucey@gordonrees.com>
To: "Edward Norwood" <enor322980@sbcglobal.net>
Date: Sat, 9 Sep 2006 08:43:09 -0700
Subject: RE: Workers Compensation Case 132A

Mr. Norwood
Please proceed as you see fit. Thank you for your note.
Mike Lucey

-----Original Message-----
**From:** Edward Norwood [mailto:enor322980@sbcglobal.net]
**Sent:** Friday, September 08, 2006 3:39 PM
**To:** Mike Lucey
**Subject:** Re: Workers Compensation Case 132A

Mr. Lucey,

Again, I will proceed with drafting up my letter to Ms. Elaine Chao regarding the enforcement that was handled by Mr. Terry Frederick who was an employee Of the U S Department Of Labor who worked with Teresa Cervantes Stanford University/Sedgwick Claims. I was reinstated to Benefits and Backpay after being terminated on March 19, 2002. At the end of my two years of receiving those benefits, I became qualified for Stanford University's retirement Benefits under the 75 rule plan, 24 years of Service plus my age 52 = 76. During my employment from 1981 through 2002, I qualified for Lifetime Medical Benefits and /or Retirement benefits. It is a normal procedure for an employee to be placed on LTD Benefits and then retire when benefits end. My benefits ended on March 19, 2004. and I was not offered Retirement Benefits even though I was qualified after two years. This was an enforcement by the U S Department of Labor, Mr. Terry Frederick. The Benefits Department never informed me of my rights and qualification.

I'm not sure what Policy applies, but Susan Cunningham @ Stanford University wrote me a letter dated July 2, 2003, to inform me of my Benefits.

One of the most important and deciding factors is my future Medical Benefits, There is not too much more to decide in this matter other than Rehabilitation in which I did not receive or was offered at the end of the 24 Months. Again, I am Currently on Social Security Disability, maybe not returing ever to work again because of my Medical Condition. I feel at this time we are wasting the Appeals Board time when the U S Department Of Labor Have already made an enforcement on this issue. The District Court Judge did not reverse the decision of The U S Department Of Labor. A Workers Comp case does not belong in District Court and a District Court case does not belong with the Appeals Board. And Lawyers are not normally Doctors.

Please advise before I proceed forward with my letter to Ms. Elaine Chao @ U. S Department Of Labor in Washington D C.

Thanks
Ed Norwood

**Mike Lucey <MLucey@gordonrees.com>** wrote:

Mr Norwood
Thank you for your email. I am unaware of what lifetime benefits you would be entitled to
as a terminated employee. If you would point me the policy I would be happy to take a
look at it.
Mike lucey

------------------------
Michael T. Lucey
Gordon & Rees, LLP

-----Original Message-----
From: Edward Norwood
To: Mike Lucey
Sent: Fri Sep 08 12:35:43 2006
Subject: Workers Compensation Case 132A

Dear Mr. Lucey,

After thinking about this entire issue, I thought that I would inform you that I will be
writing a letter to Ms. Elaine L. Chao the Secrectary Of U S Department Of Labor
regarding their inforcement back in 2003 and the problem that exist between me
Stanford University/ Zurich Insurance/ State of California Workers Compensation
Appeals Board.

I just wanted to give you headsup on this before I draft a very strong letter to her about
how I am being denied of my lifetime Medical Benefits that I qualified for as an employee
at Stanford University for 24 years.

Please advise, if you can help resolve the issues at hand before I do so.

Thanks

Ed Norwood

-----------------------------------------------------

San Francisco * San Diego * Los Angeles * Sacramento * Orange County * Las Vegas *
Portland * Houston * Phoenix * Dallas * New York

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO
MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended
recipients identified above. If you are not the intended recipient of this communication,
you are hereby notified that any unauthorized review, use, dissemination, distribution,

downloading, or copying of this communication is strictly prohibited. If you are not the intended recipient and have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

IRS CIRCULAR 230 DISCLOSURE
To ensure compliance with requirements by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.
GORDON & REES LLP
http://www.gordonrees.com

# Fortune O'Sullivan & Hudson

Attorneys At Law
Not a Partnership
Employees of a member company of Zurich Financial Services Group
560 Mission Street, #2100
San Francisco, California 94105
Telephone: (415) 227-2300
Facsimile:  (415) 227-2360

William S. Caspari
Michael Dolan
William F. Fitzgerald
Peter Fortune
Paul A. Herp
Mark W. Hudson
Norman La Force
Arlene V. H. Lee*
Alice W. O'Sullivan*
Scott J. Olsen
Cynthia Shambaugh
John Wasinda

Fresno Office:
5260 North Palm Avenue, #300
Fresno, CA 93704
Telephone:   (559) 440-4116
Facsimile:    (559) 440-4118

Sacramento Office:
3249 Quality Drive, #200
Rancho Cordova, CA 95670
Telephone:   (916) 851-3782
Facsimile:    (916) 947-5261

EXH · V

March 30, 2008

**Reply to San Francisco**

David B. Waldman, M.D.
Evaluation Resource Group
1498 Solano Avenue
Albany, CA 94706-1734

> Re:  ***Edward Norwood v. Stanford University***
>       WCAB Number:   SFO 456339 (Venue Oakland WCAB)
>       Claim Number:   201 0108840
>       Date of Injury:   3/7/02

Dear Dr. Waldman,

You previously examined Mr. Norwood at the request of his attorney, Mr. John Taylor, and issued a report dated July 14, 2004.

Since that time, Mr. Norwood has come to represent himself. His workers' compensation case went to trial beginning 1/19/07 on issues including whether he had industrial injuries consisting of psychiatric injury and high blood pressure. A Findings and Award issued 7/26/07, finding no industrial injuries. Mr. Norwood filed a Petition for Reconsideration on 8/16/07, objecting to the some of the findings regarding admissibility of various exhibits, and also objecting that your report had not been considered by the judge.

On 8/29/07, Judge Stanley Shields issued his Report and Recommendation on Petition for Reconsideration, noting that both you and Dr. Robert Blau had found applicant to have high blood pressure, but that you disagreed on aggravation. After

AQME080329Reeval

*Certified Specialist Workers' Compensation by California State Bar, Board of Legal Specialization

March 13, 2008
Page 2

reviewing the evidence, Judge Shields recommended that, "the Board should find injury consisting of aggravation of hypertension." He went on to note, "Obviously, this would result in the matter being remanded for consideration of whether the aggravation resulted in any disability, temporary or permanent, and need for future medical care." The WCAB Commissioners reviewing the Petition for Reconsideration took Judge Shields' recommendation and found Mr. Norwood to have an industrial injury consisting of an aggravation of his hypertension and remanded the matter, noting, "The issue of whether applicant is entitled to any workers' compensation benefits as a result of the industrial aggravation of his high blood pressure is deferred, pending further proceedings and determination by the WCB, jurisdiction reserved.

Your report of 7/14/07 sets forth your opinions regarding periods of TD, need for treatment, ability to return to work and work preclusions. However, the judge recommended, and the parties agreed to have Mr. Norwood return to see you again at this time to be sure that we have your best current opinion on the question of need for benefits.

We understand that Mr. Norwood has contacted your office and scheduled a re-evaluation on July 8, 2008. Please submit your bills to the adjustor in this matter, Ms. Martha Deacon, Zurich American Insurance, PO Box 7774, San Francisco, CA, 94188-7774.

I will enclose for your review the WCAB documents referenced above, along with updated records from his treating physician, Dr. Jason Chiu. I will also enclose your prior report and the transcript of your deposition, dated 11/8/04, and Dr. Blau's report of 7/6/05. Mr. Norwood may present you with additional material for review and is certainly entitled to ask you whatever questions he wants in whatever form he wants to express them.

The parties appreciate your ongoing involvement in this matter.

Sincerely,

Michael C. Dolan
Attorney at law

March 13, 2008
Page 3


Copies:  Judge Stanley Shields
         Edward Norwood
         Martha Deacon, Zurich American Insurance

# Fortune O'Sullivan & Hudson

Attorneys At Law
Not a Partnership
Employees of a member company of Zurich Financial Services Group
560 Mission Street, #2100
San Francisco, California 94105
Telephone: (415) 227-2300
Facsimile: (415) 227-2360

William S. Caspari
Michael Dolan
William F. Fitzgerald
Peter Fortune
Paul A. Herp
Mark W. Hudson
Norman La Force
Arlene V. H. Lee*
Alice W. O'Sullivan*
Scott J. Olsen
Cynthia Shambaugh
John Wasinda

Fresno Office:
5260 North Palm Avenue, #300
Fresno, CA 93704
Telephone: (559) 440-4116
Facsimile:   (559) 440-4118

Sacramento Office:
3249 Quality Drive, #200
Rancho Cordova, CA 95670
Telephone: (916) 851-3782
Facsimile:   (916) 947-5261

March 31, 2008

**Reply to San Francisco**

EXH. X

Edward Norwood
35156 Lido Blvd., #J
Newark, CA 94560

RE:   Employee:         Edward Norwood
      Employer:         Stanford University
      Date of Injury:   02/11/02
      WCAB Number:   SFO 0465339
      Claim Number:    201-0108840-001

## APPLICANT'S QUALIFIED MEDICAL EXAMINATION

Dear Mr. Norwood:

This is to remind you that your Qualified Medical Examination has been
scheduled by you as follows:

## DOCTOR AND ADDRESS:          DAY, DATE AND TIME:

David Waldman, M.D.             **Thursday, July 8, 2008 at 1:00 p.m.**
1498 Solano Ave.
Albany, CA 94706-1734
(510) 524-1680

EE QME appt ltr (Waldman) 080331

*Certified Specialist Workers' Compensation by California State Bar, Board of Legal Specialization

March 31, 2008
Page 2

You must make every effort to attend this appointment and to arrive on time. The doctor might cancel your appointment if you arrive late. Any cost incurred as a result of your failure to appear at this examination will result in a lien filed in your case against you for the cost of this appointment, and will jeopardize your rights to workers' compensation benefits.

A check for travel expenses will be sent to you under separate cover. Please record your mileage and save all receipts. If you have any questions, please contact your attorney.

Thank you for your cooperation.

> Very truly yours,
> *[Dictated but not read]*
> Michael C. Dolan

MCD/ja

cc:    Martha Deacon, Zurich Claims
       David Waldman, M.D.

# EVALUATION RESOURCE GROUP

1498 Solano Avenue
Albany, California 94706-1734

www.medlegaleval.com

Phone: (510)524-1680
     (800) 500-EXAM
Fax:   (510)528-8410

**Brian Boni, M.D.**
Occupational Medicine

**Gerard Dericks, Jr., M.D.**
Orthopaedics

**Adam Duhan, M.D.**
Occupational and Internal
Medicine

**Ira B. Fishman, M.D.**
Internal Medicine

**Stephen Francis, Ph.D.**
Psychology

**Donald Goldmacher, M.D.**
Psychiatry

**Jing Hsieh,**
Hand Surgeon

**Richard Landess, Ph.D.**
Psychology

**Ruth Marlin,**

**Ana Marta Salinas, M.D.**
Physiatry

**Daniel Schainholz, M.D.**
Ophthalmology

**Martha Singer, M.D.**
Orthopaedic Surgery

**Harry Smith, M.D.**
Otolaryngology

**Judith Stanton, M.D.**
Internal Medicine

**David B. Waldman, M.D.**
Gastrointestinal &Internal
Medicine

**Helena Weil, Ph.D.**
Psychology

---

**David B. Waldman, M.D.**
Gastrointestinal &Internal Medicine

Thursday, March 20, 2008

## NOTICE OF RE-EVALUATION APPOINTMENT

Mr. Edward Norwood
35156 Lido Blvd., Apt. J
Newark, CA 94560

EXH· Y

Dear Mr. Norwood:

Per your request, an appointment for re-evaluation with Dr. David B. Waldman in connection with your workers' compensation claim has been scheduled as follows:

| | |
|---|---|
| **CLAIM NUMBER:** | 201-0108840 001 IR |
| **DATE:** | Tuesday, July 08, 2008 |
| **TIME:** | 1:00 PM |
| **EVALUATION BY:** | David B. Waldman, M.D. |
| **LOCATION:** | 1498 Solano Ave. |
| | Albany, CA 94706-1734 |
| **CALL TO CONFIRM:** | 510-524-1680 |

Thank you for your attention in this matter. Please feel free to call our office if you have any questions.

Sincerely,

Nancy Aden-Gleason

Please note our cancellation policy. The charge for a missed appointment or a cancellation within 7 calendar days of the scheduled appointment is $250.00 billed to the responsible party.

cc  Mr. Michael Dolan
     Ms. Rina Yan